## WATTERS v. HERTZ.

1. The petition, properly construed, was for the 'recovery of land and the rental thereof, the possession of which land the defendant held under the plaintiff for the purpose of cutting and' removing the timber and cord-wood therefrom, and which, after such purpose had been accomplished, the defendant refused to surrender to the plaintiff.

2. If D. by contract procured from the plaintiff the right to take possession of the land in question for the purpose of cutting and removing the timber and cord-wood therefrom, and transferred' such right to the defendant, who entered upon the land with the acquiescence of the plaintiff, and when the purpose for which the defendant had thus obtained possession of the land had been fully accomplished he refused to surrender possession to the plaintiff, the latter would have the right to recover the land from the defendant, although no direct contractual relation existed between them.

3. The objection to the allowance of the second count of the petition, set forth in the amendment thereto, "upon the ground that the law of an undisclosed principal has no application in the case of a contract under seal," was not well taken, for the reason that the contract set out in this separate and independent count of the petition did not appear to be under seal.

(a) Such separate and independent count could neither be aided nor impaired by reading into it something appearing only in the preceding count.

4. If the defendant entered into possession of the land under and by virtue of a contract between the plaintiff and D., under the terms of which D. had the right to cut and remove the timber and cord-wood from the land, and the defendant purchased from D. the latter's right to cut and remove the timber and cord-wood, then the defendant could not, without first surrendering to the plaintiff the possession so obtained, dispute the latter's title to the land.

5. The petition was not subject to any of the grounds of the demurrer, and the court did not err in refusing to sustain the same.

FEBRUARY 22, 1911.

Complaint for land. Before Judge Wright. Floyd superior court. November 17, 1909.

In an action brought by Rebecca Hertz against A. W. Watters, the petition, after alleging that the defendant resided in the county wherein the suit was brought, proceeded as follows:

"2. That on the 25th day of January, 1906, petitioner entered into the following contract with said J. C. Doss, to wit:—

'Georgia, Fulton County: This agreement made and entered into this twenty-fifth (25th) day of January, nineteen hundred and·six (1906), by and between J. C. Doss of the County of Floyd and the State of Georgia, and Miss Rebecca Hertz of the County of Fulton

and the State of Georgia, witnesseth that the said J. C. Doss, for and in consideration of the timber contained on land lot number two hundred (200) in the twenty-third (23rd) district and the third (3rd) section of Floyd County, Georgia, has agreed to build on the said land a four (4) room cottage and to enclose the said lot of land with a first-class wire fence, and by these presents does agree to build said four (4) room cottage, with kitchen, and fence the said lot of land with a wire fence.

'Witness: H. M. Crosby.                   (Signed) J. C. Doss.

'January 25th, 1906. This is to certify that I, J. C. Doss, do hereby promise and agree to protect Miss R. Hertz from any harm that might come up at any time cancelling the contract that she and I have agreed upon, for the amount of (500) five hundred,— payable on demand, should anything occur from any cause concerning this transaction.

'Witness: H. M. Crosby.                           J. C. Doss.

'And I hereby agree to cancel contract should she find that it would prove unsatisfactory to her, provided she protects me from actual loss.                                          J. C. Doss.

'These changes above were made in my presence and I agree thereto. Jany. 25th, 1906. Atlanta, Ga.

'Witness: H. M. Crosby.                           J. C. Doss.

'This is to certify that I agree to divide profits with Miss R. Hertz should there be any over and above reasonable wages.

J. C. Doss.

'This division of profit is to be derived from timber and cord-wood on land lot No. 200 23-3, Floyd County, 160 acres.   J. C. Doss.

"3. That afterwards the following paper was signed up:—

'This contract, entered into this the 29th day of May, 1906, between Miss Rebecca Hertz of Fulton County, Georgia, of the one part, and Mr. J. C. Doss of Floyd County, Georgia, of the other part, witnesseth, that whereas, on the 25th day of January, 1906, said parties entered into a contract for the sale of the timber on lot of land No. 200 in the 23rd district and 3rd section of Floyd County, Georgia, the said Doss being the purchaser, in which said contract it was agreed that the wire fence should be built around said lot and the house should be built on said lot, the description of the fence and house not being given in detail; and whereas it is represented that said Miss Hertz may not have been fully em-

powered to represent and contract for all the interests in said lots: Therefore this instrument is executed, and said Miss Hertz hereby contracts and agrees that she now owns or has full power to represent all interests in said lot, or she will procure the written ratification of the parties holding interest therein. The said Doss on his part agrees and does hereby define more definitely the character of improvements to be made on said lot, and the same are to be as follows, to wit:' "

Here follows a full description of the house to be erected, with dimensions, etc., with the statement that its location on the land is to be designated by Miss Hertz, that the work shall be done in a workmanlike manner, and that the building shall be completed by January 1, 1907. Also, that the fence shall enclose the entire lot, shall be a lawful barbed-wire fence as designated by the statute of Georgia, and that it shall be completed January 1, 1907. The contract continues as follows:

"The said Doss shall give good and sufficient security for the execution of this contract. Witness the hands and seals of the parties hereto. Executed in duplicate.          J. C. Doss. (L. S.)
                                        Rebecca Hertz.    (L. S.)
"Signed, Sealed, and Delivered in presence of us, by J. C. Doss:
  "E. A. Green. Julian Moses, N. P. Floyd Co. Ga., (Seal)
"I hereby guarantee performance of the foregoing contract by Mr. J. C. Doss. This May 29th, 1906.          Allie W. Watters.
"In presence of us:
  "E. A. Green. Julian Moses, N. P. Floyd Co. Ga., (Seal)
"Signed, Sealed, and Delivered in presence of us by Miss Rebecca Hertz.
  "J. W. Cavender.    Aldine Chambers, Notary Public, Fulton Co. Ga., (Seal)
"The undersigned as one of the tenants in common of the land lot described in the written contract, holding under bond for title from S. B. Cohen and E. J. Cohen as heirs at law of E. H. Cohen, hereby consents to the execution of the within contract. This May 30, 1906.
            "The J. A. Scott Company, by J. A. Scott, Prest.
"In presence of us:
  "J. W. Cavender.    Aldine Chambers, Notary Public, Fulton County, Ga., (Seal)"

"4. That the said Allie W. Watters, having succeeded to the rights of the said J. C. Doss under the above and foregoing contracts, entered into possession of said land lot No. 200 in the 23rd Dist. and 3rd Section of said County, under said contracts, early in the spring of 1906, and proceeded to cut the timber thereon, and he now declines to surrender possession of said land to your petitioner, or to pay the rents, issues, and profits therefrom, which are of the yearly value of $500.00." The prayers were for the recovery of the land and mesne profits, and for process.

The defendant demurred to the petition, on the following grounds: (1) It sets forth no cause of action. (2) No title to, or prior possession of, the property sought to be recovered is set forth. (3) No abstract of title is attached. (4) It appears, from the agreement set out in the 3d paragraph, "that plaintiff contracted and agreed that she owned and had full power to represent all interest in said land, or that she would procure the written ratification of the parties holding interest therein. It does not appear that she complied or is able to comply with the terms of her agreement with reference to said matters and things. Defendant insists until she has so complied she has no rights under said contract and no right to eject this defendant from the possession of said property." (5) "Under the allegations of the petition it appears that the contracts between plaintiff and J. C. Doss dealt only with the timber on the land described in the petition and sought to be recovered, and had no reference to the land itself or title thereto. That the purchase of the timber on said land from the plaintiff would not prevent said Doss or those claiming under him from buying the land from the true owner and taking possession thereof. It is not alleged that defendant is not the true owner of the title to said land." (6) "Especially demurring to paragraph four of the petition, defendant says it is not shown by this paragraph how he succeeded to the rights of J. C. Doss under the contracts set forth in paragraphs two and three of the petition. Defendant insists that it should appear by what right or in what way and for what consideration the rights of said Doss under said contract were transferred to him."

The plaintiff offered the following amendment to her petition:

"1. That the said A. W. Watters purchased from the said J. C. Doss all of his interest in and to the timber and cord-wood on said

land lot No. 200, the purchase-price thereof and the exact manner of conveyance thereof being unknown to this petitioner, but which are fully known to the defendants; that by said purchase the said A. W. Watters succeeded to the rights of the said J. C. Doss under said contract, and, in accordance with the privileges therein granted, entered upon said lot of land and cut therefrom the timber and cord-wood, and converted the same to his own use and benefit; that the entry of said Watters upon said lot of land was under said contract.

"2. That this plaintiff allowed the said A. W. Watters to enter upon the said lands, and to remove said timber and cord-wood, which was a full performance of said contract upon her part, and it would now be a fraud upon petitioner not to compel a compliance with the provisions of said contract on the part of said A. W. Watters; and the said A. W. Watters, having secured possession of said property under the terms of said contract, is now bound to surrender possession thereof to this petitioner.

"And said plaintiff further amends her said petition, by adding the following additional count:" Here follow the same allegations as set out in the 1st and 2d paragraphs of the petition. No reference was made in the 2d count to the last contract bearing date of May 29, 1906. The remaining allegations in the second count of the offered amendment were as follows:

"3. That, in procuring and making the above and foregoing contract, the said J. C. Doss was acting as agent for and in behalf of the said Allie W. Watters, his undisclosed principal.

"4. That the said Allie W. Watters had full knowledge of all the provisions of said contract so made by his said agent, J. C. Doss, and he ratified and confirmed the same; and in entering upon said land and taking to himself all the advantages of said contract, he became bound by all the liabilities thereof, and petitioner has the same legal rights as against him that she had against the said J. C. Doss, had said contract been made for his own benefit.

"5. That the said Allie W. Watters entered upon said land and cut the timber and converted the same to his own use, under the said contract, that in allowing him to do so, the same amounted to a performance by petitioner of said contract, and it would now be a fraud upon her rights not to compel the said Allie W. Watters to restore possession of the said land to her.

"6. That the said Allie W. Watters declines to surrender possession of said land lot No. 200 to your petitioner, or to pay her the rents, issues, and profits therefrom, which are of the yearly value of $500.00."

The prayers in this count were the same as those in the original petition. To the amendment containing the second count the defendant objected on the grounds, "that the 1st count of said amendment should not be allowed, for the reason that it showed no privity or contractual relation between Rebecca Hertz and Allie W. Watters; and to the allowance of the second count, . . [because] the law of an undisclosed principal has no application in the case of a contract under seal, and it appearing by the contract sued upon and set out in plaintiff's petition that the same was under seal."

The amendment was allowed. The defendant filed a bill of exceptions, assigning error upon the overruling of the demurrers, and to the allowance of the amendment.

*Dean & Dean* and *Nathan Harris,* for plaintiff in error.

*Maddox & Doyal* and *George A. H. Harris & Son,* contra.

FISH, C. J. (After stating the facts.) The court did not err in overruling the objections urged by the defendant to the amendment to the plaintiff's petition. It will be seen that this amendment first added two numbered paragraphs to the original petition, and then added thereto a separate, independent, and separately paragraphed count, whereby the petition as amended contained two counts, the first of which was the original petition enlarged by the two additional paragraphs above referred to, and the second of which was the new count set forth in the amendment. The objection that the amendment to the first count "should not be allowed, for the reason that it [shows] no privity or contractual relation between Rebecca Hertz and Allie W. Watters," was without merit. The original petition, while not drawn with such precision of statement as to clearly and aptly set forth the evident purpose for which it was brought, and while containing matter which, relatively to such purpose, was entirely superfluous, was, when properly construed, simply a petition for the recovery from the defendant of a described tract of land, and the rental thereof; the possession of which land he had held under the plaintiff for a given purpose; and which, after this purpose had been accomplished, he refused to surrender to her. While there were statements in the original peti-

tion to the effect that the defendant had, by purchasing from Doss all his rights and interest under the contract which he had with the plaintiff, and by receiving and enjoying the same with the plaintiff's consent or acquiescence, become bound to carry out the obligations to the plaintiff which Doss had undertaken under the contract, the plaintiff did not declare upon this contract and was not seeking to recover upon it, and such allegations formed no essential part of the cause of action which was really set up in the petition. They were mere surplusage and should be so treated. It matters not whether there was any direct contractual relation between the plaintiff and the defendant. If Doss, by contract with the plaintiff, procured from her the right to take possession of the land in question, for the purpose of cutting and removing the timber and cord-wood therefrom, and transferred such right to Watters, and Watters entered upon the land, with the plaintiff's consent or acquiescence, under the contract which Doss had made with her, and, when the purpose for which Watters had thus obtained possession of the land had been fully accomplished, he refused to surrender the possession to the plaintiff, she had a right to recover the land from him, whether he had any direct contractual relation with her or not. The petition set forth a suit, in the nature of an action of complaint for land, to recover the particular tract of land described therein. The contract or contracts between Doss and the plaintiff and the purchase by Watters of the rights of Doss under the same, were apparently set forth for the purpose of showing how, upon what terms, and for what purpose Watters took possession of the land, and that he held under the plaintiff through Doss, and was bound, just as Doss would have been, to surrender this possession to her when the term for which he was to have possession had ended. From the petition it appears that this term was indefinite when the contract was entered into, and was to be measured by the time consumed in accomplishing the purpose for which the possession was taken under the contract, and it ended when the timber and cord-wood had been cut and removed from the land.

The objection to the allowance of the second count of the petition, set up in the amendment thereto, "upon the ground that the law of an undisclosed principal has no application in the case of a contract under seal," was not well taken, for the simple and sufficient reason that the contract as set forth in this separate and inde-

pendent count of the petition is not under seal. According to the written instrument set forth in this count and the allegations as to performance by the plaintiff, the contract is not a specialty, but a simple contract, signed by one of the parties to this action only, and accepted and performed by the other. This separate and independent count can neither be aided nor impaired by reading into it something which appears only in the preceding count. See *Pate v. Allison,* 114 *Ga.* 651 (2), 653 (40 S. E. 715). As already indicated, the general demurrer was properly overruled. The petition set forth a cause of action for the recovery of the possession of the land in question from the defendant. If he entered into possession of the land under and by virtue of the contract between the plaintiff and Doss, as set forth in the first count of the amended petition, by having purchased from Doss all his rights thereunder, for the purpose of cutting and removing the timber and cord-wood therefrom, he could not, without first surrendering the possession thus obtained from the plaintiff, dispute her title. The well-established principle, that a tenant can not dispute his landlord's title while he retains the possession acquired from the latter, applies with equal force as between a licensee and his licenser. Bigelow on Estoppel (5th ed.), 542; 24 Cyc. 943. It was so decided by the Court of King's Bench in 1835, in Doe d. Johnson v. Baytup, 3 Ad. & E. 188, wherein the real plaintiff "being in possession of a house and premises, defendant asked leave to get vegetables in the garden; and having obtained the keys for this purpose, fraudulently took possession of the house, and set up claim of title." It was held, "that, having entered by leave of the party in possession, she could not defend an ejectment, but was bound to deliver up the premises before she proceeded to contest the title;" and that "a mere licensee is, in this respect, on the same footing as a tenant." In Glynn v. George, 20 N. H. 114, it was held: "One who is in possession of land under a license, can not dispute the title of the grantee of the party from whom such license has been derived. After the expiration of the term of the license, his possession, as against such grantee, is that of a mere trespasser." In Kluge v. Lachenour, 34 N. C. 180, it was held that a mere licensee of a lessee is estopped to deny the landlord's title. In a later case, before the same court, the defendant, as overseer of a road, entered on and took possession of a piece of land belonging to the plaintiff,

for road purposes, under a license from the tenant of the plaintiff. In a suit for damages, brought by the plaintiff for the alleged trespass, the court, after first holding that a license from one who had no right to give it can not justify an illegal act, held further, that one who enters as a licensee is estopped to deny the title of his licenser, and when the license is given by a tenant, the licensee is estopped to deny the title of the licenser's landlord. To the same effect was the ruling in Hamilton & Rossville Hydraulic Co. v. Cincinnati, Hamilton & Dayton R. Co., 29 Ohio St. 341, in which it was held, that where a license to fill up a watercourse was obtained from a corporation in possession as owner, in consideration of a promise to reopen and restore the watercourse when requested so to do, the licensee, when sued for a breach of his promise, was estopped from setting up that the ownership and maintenance of the watercourse by the corporation were ultra vires. See *Williams v. Cash,* 27 *Ga.* 507 (73 Am. D. 739) ; *Harris* v. *Amoskeag Co.,* 101 *Ga.* 641 (29 S. E. 302).

According to the allegations of the petition, the plaintiff had fully performed her part of the contract with Doss, by allowing Watters, his assignee, to cut and remove the timber and cord-wood from the land; and this being true, Watters's right to hold possession of the land for any purpose had terminated, and he had become, relatively to the plaintiff, a mere trespasser, against whom she had a right of action for the recovery of the land.

None of the special demurrers was meritorious. As already shown, it was not necessary for the plaintiff to show any legal title to or prior possession of the land; as the defendant having entered upon the same as her licensee, his possession, during the term of his license, was her possession, and he was in no position at the institution of the suit to dispute her title. For the same reason, it was not necessary for the plaintiff to set forth, or attach, an abstract of title.

The demurrer upon the ground "that plaintiff contracted and agreed that she owned and had full power to represent all interest in the land, or that she would procure the written ratification of the parties holding interest therein," and "It does not appear that she has complied or is able to comply with the terms of her agreement with reference to said matters and things," is so obviously without merit as hardly to need discussion. According to the petition the defendant, Watters, had remained in the undisturbed possession of

the land for the full term of his license, and had received and enjoyed all the benefits to which he was entitled under the contract, and it was no concern of his in this suit whether the plaintiff owned, or had full power to represent, all interests in the land or not. Construing the stipulation here referred to as being· in the nature of a warranty of title and quiet enjoyment, there had been no breach of the same, and the right of Watters to hold possession of the land for any purpose had ceased to exist.

In reference to the fifth ground of demurrer,· it may be said, that while it is true that in the contract between the plaintiff and Doss the plaintiff did not undertake to convey any interest in the land further than the timber growing thereon, and that one may own the standing timber upon a given tract of land without holding the legal title to, or even being entitled to the possession of the land itself, yet it is apparent, under the allegations of the petition, that the possession which Watters obtained was derived from the plaintiff. Moreover, the contract shows that Doss dealt with the plaintiff as an owner of the land and as having the right to the possession of the same. He not only agreed to purchase from her the timber upon the land, but, in consideration of the sale of the timber to him, he also agreed to erect on the land a four-room dwelling-house and also a kitchen,· and to inclose the whole tract with a substantial barbed wire fence, thus impliedly recognizing, if not her title to the land, at least her right to the possession of the same. On the other hand the contract, as amplified and explained by the sealed instrument which was signed by both the plaintiff and Doss, contains the stipulation, apparently inserted at the instance of Doss, that the plaintiff "hereby contracts and agrees that she now owns or has full power to represent all interests in said lot or she will procure the written ratification of the parties holding interest therein." This shows that the parties were not dealing with the timber upon the land as an interest therein which had been previously ·carved out of the entire fee, but as something which at the inception of the contract was still embraced in the original fee to the land itself and which, but for the making of the contract, would so continue.

*Judgment affirmed. All the Justices concur.*