BASS *v.* SEABOARD AIR LINE RAILROAD COMPANY.

No. 16629.   MAY 12, 1949.   REHEARING DENIED JUNE 16, 1949.

464

T. J. Lewis and Richard M. Maxwell, for plaintiff.

William H. Schroder and MacDougald, Troutman, Sams & Branch, for defendant.

Moise, Post & Gardner, for persons at interest, not parties.

DUCKWORTH, Chief Justice. (After stating the foregoing facts.) ■ The general demurrer to the first count of the petition as amended does not attack it on the ground that no cause of action is set out because of the alleged negligence of the de-

fendant, but solely because the allegations fail to show that the petitioner is entitled to have voided a certain release which he executed to the defendant, and that it appears that by reason of this release the defendant has been discharged from all liability based on the injuries received on February 18, 1947. A determination of the validity of the release will, therefore, dispose of the question raised by the general demurrer to count one as amended. In sustaining the general demurrer, the trial court relied upon *Morris* v. *Seaboard Air-Line Ry.*, 23 *Ga. App.* 554 (99 S. E. 133), which held: "Where one injured in a railway collision executes voluntarily, and upon a consideration adequate for the injuries then known, a written release of all claim on account of his injuries, he cannot, on subsequent discovery of injuries not known or suspected at the time of the settlement, obtain a cancellation of the release, on the ground of mistake, in the absence of fraud or undue influence." Incidentally it may be remarked that, since the plaintiff sought the equitable aid of the court to cancel and set aside the release there involved, the Court of Appeals was without jurisdiction to decide the case, but in any event it would not be applicable to any case where there was mutual mistake of the parties as to a present or past fact. There it was not alleged that the mistake of fact was mutual. It appears from the record, which we have examined, that at the time of settlement the only injury which the plaintiff thought he had was a bruise upon the forehead. He suffered no pain, and the estimate of his injury appears to have been made only by himself. No representations were made by the defendant, and it was not alleged, as that opinion shows to be necessary where only the claimant labors under a mistake of fact, that any fraud was practiced upon him by the defendant. It appears that he was paid an adequate sum based on the bruise which he sustained. Later it developed that he had necrosis of the frontal bone, and obviously there was no mistake, mutual or otherwise, respecting this particular injury. In the present case, the statements of the defendant's agents and the belief of the petitioner related to no injury which was not in existence at the time of the settlement, but the alleged mutual mistake was as to the nature and seriousness of the known injury, and not merely, as conceived by the trial judge, a mistaken opinion as to prospective

or future occurrences, which, as ruled in *Callan Court Co.* v. *Citizens &c. Bank,* 184 *Ga.* 87 (3) (190 S. E. 831), and other like authority, does not afford ground for equitable relief. It was alleged in the present case that the petitioner thought at the time of settlement that his injuries then existing and known were neither serious nor permanent, and that "the said official, agent and employee of the defendant, Vuncannon, and the said physician, James, were laboring under a mutual mistake as to the seriousness and permanency of the plaintiff's injuries, and because of said mutual mistake said release, accord and satisfaction, was signed and entered into by the parties as aforesaid." The following allegations of the petition show that the alleged mutual mistake was as to a "present or past fact." After examination at the Hamlet Hospital by Dr. W. D. James Jr., the company's physician, following the petitioner's injuries on February 18, 1947, he was informed by him that "there was not much the matter with him and that a few heat treatments would put him right and to return to his home." On or about February 27, 1947, the said physician advised him that he was able to return to work, that his injuries were not serious or permanent, and that he was cured of his "injuries and hurts aforesaid, telling him at the time that he had essentially recovered, and that he had only to exercise himself to get the pain and stiffness out of his hurts"; and the petitioner, "being unskilled and unschooled in the art of medicine and surgery, thought at the said time that his injuries were neither serious nor permanent." The said physician also advised him that he could safely settle his difficulties with the defendant upon the basis of no permanent injuries, and in that belief the petitioner executed the release to the defendant on February 27, 1947, for an amount which he does not recall, but which he believes to be $97, and as to which amount the defendant is well apprised. "On or about July 7, 1948, the petitioner learned for the first time his true condition, namely, that he had received a permanent injury to his back as aforesaid, when Dr. Rapp, the defendant's surgeon, after examination, advised the petitioner that he could never do the same kind of work again and could not return to work." On July 12, 1948, the petitioner tendered to the defendant $125 in lawful money of the United States to cover the amount paid him by its agent,

Vuncannon, claim agent, and demanded the release, which tender and demand the defendant refused.

Whether or not the mistake here alleged was a mutual one and such as would authorize the cancellation of the release, it is clear that the petitioner was mistaken as to the nature and extent of the injury he had received, and that such belief was induced by the misrepresentations of the defendant's agents. In such circumstances it is not necessary that the misrepresentations be fraudulent in fact in order to authorize a cancellation of the release. It was held as early as *Smith* v. *Mitchell*, 6 *Ga.* 458, that, "Whether a party thus misrepresenting a fact, knows it to be false or not, is wholly immaterial; for the affirmation of what one does not know to be true, or believe to be true, is equally, in morals and in law, as unjustifiable as the affirmation of what is known to be positively false. . . If a party thus affirming a fact *believes it* to be true, when it is false, it is a fraud *in law*, and equity will rescind the contract and restore the parties to their original rights. And if a party innocently, by mistake, misrepresents a fact, which is material, and to which the other party trusts, it is cause for rescinding the contract, because it operates as a surprise and an imposition upon him." See also *Reese* v. *Wyman*, 9 *Ga.* 430; *Bailey* v. *Jones*, 14 *Ga.* 384; *Terhune* v. *Dever*, 36 *Ga.* 648; *Woodruff* v. *Saul*, 70 *Ga.* 271; *Newman* v. *Claflin*, 107 *Ga.* 89 (1) (32 S. E. 943) ; *Benson* v. *May*, 149 *Ga.* 555 (101 S. E. 177) ; *Beavers* v. *Williams*, 199 *Ga.* 113, 128 (33 S. E. 2d, 343) ; *Dundee Land Co.* v *Simmons*, 204 *Ga.* 248, 249 (49 S. E. 2d, 488) ; 5 Williston on Contracts, 4189, § 1500. Of course, equity recognizes that there are exceptions to the general rule. As stated in *Smith* v. *Mitchell*, supra: "Nor does the rule apply to cases where the fact affirmed is of such a nature that the other party had no right to place reliance on it, and it was his own folly to give credence to it, for courts of equity will not aid parties who will not use their own sense and discretion. This exception contemplates a case where both parties have equal opportunities and means of knowing the truth of the statement, and where, in the very nature of the transaction, it is unreasonable to believe that a sensible man would act upon the statement of the other side, and where, if he does, he must be considered as reposing a confidence not necessary, and not expected, and with-

out ordinary sense and discretion." Decisions of this court might be cited to illustrate the exception, such as where the releasor has equal or superior knowledge as to the subject-matter, or where the error is as to the contents of a paper which could as readily become known to the releasor as to the releasee and where no trick, artifice, etc., was practiced upon the releasor to prevent his acquainting himself with the contents of such a paper. But surely it could not be seriously contended that the facts of the present case, where the releasor relied upon the representations of the company's physician, bring it within the exceptions to the general rule hereinbefore announced. The law properly recognizes that on account of his peculiar knowledge the injured party ordinarily has a right to rely on the statements of an attending physician of the releasee as to the nature and extent of the injury. 45 Am. Jur. 688, § 23; annotations in 48 A. L. R. 1486, 1520, and in 117 A. L. R. 1032, 1041. In *Southern Ry. Co.* v. *Nichols,* 135 *Ga.* 11 (68 S. E. 789), it was held that "An amendment which alleges that the employee was induced to sign the release upon the false representation of the agent that the company's surgeon pronounced his injury slight, and that he would be able to resume work in a few days, and upon the company's agent delivering to him at the time an order directing the employee's immediate superior officer to restore him to his former situation," which order was repudiated by the company, and that as soon as he was refused employment he tendered to the agent the consideration he had received for the release, which tender was refused, was sufficient to raise an issue of fraud in the procurement of the release. In *Baker County Power Co.* v. *Adkins,* 169 *Ga.* 187 (4) (149 S. E. 910), where the facts alleged to have been relied upon were peculiarly within the knowledge of the defendant making the statements and not within the knowledge of the plaintiff, it was held: "It is not necessary that confidential relationship be shown in every instance, in order to justify one in believing the statements of an opposite party." The statements of the physician and the claim agent here were not merely opinions, and not so given, but were representations, even though innocently made, that the petitioner's injuries were not serious and of a permanent nature and that he could safely settle his case with the defendant, and these representations induced a

belief in the petitioner, a layman unschooled in medicine and surgery, that he was not seriously and permanently injured. While some of the statements might be said to be prophetic only, they accompanied statements as to his condition at the time of settlement, relating to a present fact, naturally acquiesced in by the petitioner as a layman, which were sufficient, if proved, to authorize a cancellation of the release on account of misrepresentations of facts though innocently made. The petition shows that it was not until July 7, 1948, that he was advised of the full extent of his injuries and their permanent nature, and that on July 12, 1948, he tendered back the amount he had received in settlement, which tender was refused by the defendant. It could not, therefore, be said as a matter of law that the petitioner did not act within a reasonable time. It follows that the court erred in sustaining the general demurrer to count one of the petition as amended.

Our attention is invited to an alleged inconsistency in the allegations of count 1 and count 2 of the petition. It is alleged in count 1 that the petitioner was injured on February 18, 1947, and entered into a settlement on February 27, 1947, but did not know the full nature and extent of his injuries, which he alleged to be permanent, until July 7, 1948. In count 2 it is alleged that he was injured on July 5, 1948, and that prior thereto he was a strong and able-bodied man, 26 years of age, earning and capable of earning the sum of $300 per month by his labor. It is argued, therefore, that the injuries received on February 18, 1947, had necessarily ceased to exist as of July 5, 1948, and the petitioner should not be granted relief in equity under count 1. While we recognize the discrepancies pointed out, we cannot look beyond the allegations of count 1 in testing it on general demurrer, but each count must stand on its own strength or weakness without being aided or harmed by reference to another. *Cooper* v. *Portner Brewing Co.*, 112 *Ga.* 894 (3) (38 S. E. 91); *Watters* v. *Hertz*, 135 *Ga.* 804 (3-a) (70 S. E. 338); *Saffold* v. *Anderson*, 162 *Ga.* 408 (2) (134 S. E. 81).

Adherence to this rule does not mean, however, that when evidence is introduced by the petitioner in support of the allegations of count 1, the defendant may not, as touching the petitioner's credibility, introduce in evidence the allegations of count 2

which are inconsistent with those in count 1 and which indicate that when he was injured on July 5, 1948, as alleged in count 2, he was a strong, able-bodied man, earning and capable of earning $300 per month by his labor. Whether or not such allegations in count 2, solemn admissions in judicio, would render testimony of the petitioner as to the nature and extent of his injuries alleged in count 1 unacceptable, would be exclusively for the determination of the jury.

■ The action in count 2 of the petition as amended was brought under the Federal Safety Appliance Act (45 U. S. C. A., § 11), and Federal Employer's Liability Act (45 U. S. C. A., § 51). The first-named act provides as follows: "It shall be unlawful for any common carrier subject to the provisions of sections 1-16 of this title to haul, or permit to be hauled or used on its line, any car subject to the provisions of said sections not equipped with appliances provided for in sections 11-16 of this title, to wit: All cars must be equipped with . . efficient hand brakes . . Provided, That in the loading and hauling of long commodities, requiring more than one car, the hand brakes may be omitted on all save one of the cars while they are thus combined for such purpose." The last-named act provides: "Every common carrier by railroad while engaging [in interstate commerce as here] . . shall be liable . . to any person suffering injury while he is employed by such carrier in such commerce . . for such injury . . resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." In § 53 of the Federal Liability Act it is provided that "the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: Provided, That no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

Under numerous decisions of the Federal courts where the neg-

ligence of the employee is the sole and proximate cause of his injury, there can be no recovery; but where the common-carrier's negligence contributes in part to the injury, the employee is not barred from recovery though he may have been guilty of contributory negligence. Norfolk & Western Ry. v. Earnest, 229 U. S. 114 (33 Sup. Ct. 654, 57 L. ed. 1096); Union Pacific R. Co. v. Hadley, 246 U. S. 330 (38 Sup. Ct. 318, 62 L. ed. 751); Rocco v. Lehigh Valley R. Co., 288 U. S. 275 (53 Sup. Ct. 343, 77 L. ed. 743). See also Atlantic Coast Line R. Co. v. Anderson, 200 Ga. 801 (38 S. E. 2d, 610). In the Hadley case, supra, a train, after stopping on the main line, was run into from the rear by another train. The brakeman failed to perform his duty of going back to warn the following train by light, torpedoes, etc., but remained in the caboose of his train, where he was killed. In a suit for recovery for his death, negligence was alleged against the railroad company in the failure of its employees on the rear train to observe signal lights on a block system and the negligence of the dispatcher in sending the two trains out in a snowstorm. In holding that there could be a recovery, the Supreme Court of the United States said: "But it is said that in any view of the defendant's conduct the only proximate cause of Cradit's (the brakeman's) death was his own neglect of duty. But if the railroad company was negligent, it was negligent at the very moment of the final act. It ran one train into another when if it had done its duty neither train would have been at that place. Its conduct was as near to the result as that of Cradit. We do not mean that the negligence of Cradit was not contributory. We must look at the situation as a practical unit rather than inquire into a purely logical priority. But even if Cradit's negligence should be deemed the logical last, it would be emptying the statute of its meaning to say that his death did not 'result in part from the negligence of any of the employees' of the road. . . In Great Northern Railway Co. v. Wiles, 240 U. S. 444, it appeared that the only negligence connected with the death was that of the brakeman who was killed." Many other similar cases could be cited. Here the alleged negligence of the railroad is its violation of the law enacted for the safety of the employee in respect to efficient hand brakes, and in these circumstances the proviso in § 53 comes into operation. That proviso, as herein-

above quoted, eliminates any negligence of the employee where the violation by the common carrier of a statute enacted for the safety of the employee contributes to injury or death of such employee, and his contributory negligence, if any, does not operate to diminish the amount of recovery. Grand Trunk &c. R. Co. v. Lindsay, 233 U. S. 42 (34 Sup. Ct. 581, 58 L. ed. 838); Spokane & I. E. R. v. Campbell, 241 U. S. 497, 510 (36 Sup. Ct. 683, 60 L. ed. 1125).

In sustaining the general demurrer to count 2 of the petition as amended, the trial court based its opinion on the theory that the employee's injury was not sustained by reason of the failure of the defective brake to function, but that the actual cause of his injury was his act of alighting and running into a switch stand, whereas the allegation was that, in the emergency created by the failure of the brakes to apply, he dismounted from the cars by means of the handholds and grab irons in order to reach the brake on the third car in his effort to stop the cars, and in dismounting a few feet from a switch stand and to keep from running into it he wheeled around, and in doing so injured his back in described particulars. It was said in the written opinion of the trial judge, and so argued by counsel for the defendant in error, that the defective brake merely created a condition or reason which caused the employee to be at the place where he was injured, but that the proximate and efficient cause of his injury was his negligence after reaching the ground, it being contended by counsel for the defendant in error that he should have dismounted in time to avoid the necessity of a sudden turning around upon being confronted with the switch stand. In support of his ruling the trial judge relied upon *Powell* v. *Waters*, 55 *Ga. App.* 307 (190 S. E. 615), and counsel for the defendant insist that it is controlling. We cannot subscribe to that view. There the negligence of the employee was held to be the sole and proximate cause of his death, and whether or not it was correctly decided it is distinguishable on its facts. There an airbrake pump on an engine of the defendant railroad failed to function. The engineer stopped the train, went out on the runway or catwalk along the boiler, and hammered on the drum enclosing the pump. After hammering for approximately an hour, this exertion and the heat of the boiler exhausted him and he later

died. The court held that there was a violation of the Safety Appliance Act, but that it merely created a condition or situation in which the deceased was responsible for his own injury in voluntarily over-exerting himself in the extreme heat to which he was exposed. The engineer had stopped the train and asked headquarters for instructions, but none came, and in a laudable but wholly unnecessary effort to correct the trouble immediately he brought about a physical condition which resulted in his death.

We have in the present case no mere condition in which the switchman might have paused and escaped injury. He was confronted with a dangerous situation, and an emergency had been created by the defective hand brakes. He was riding, at the direction of his superior, the foreman in charge of the switch crew, a string of three cars loaded with wood and moving on a downgrade. His task was to ride the cars into track No. 30 and stop them with the hand brake. Appropriately, he tried to accomplish this by turning the hand brake on the lead car. It was defective and would not function. He met with a similar difficulty with the hand brake on the second car. The emergency thus created is described in the petition as follows: "The brakes on the said cars being located as aforesaid, the petitioner could not see if there were other cars in front of him or not. He could not see around them, as the wood thereon obstructed his view and could not tell how far from other cars, if any, in said track the cars he was riding at that time were, and being unable to reach the brake on the other car on account of the load unless dismounting, and as said cars were gaining speed, and knowing that they would collide with other cars unless stopped, the petitioner, in the emergency thus created, dismounted therefrom." Certainly a jury would be authorized to find that, had the petitioner remained on the car with a defective hand brake, he would not only have been unable to prevent a collision with other cars on track No. 30, which the petition shows was inevitable unless the string of three cars was successfully stopped, but would have subjected himself to injury or death. Had he remained on the car and suffered injury by reason of the failure of the hand brake to function, resulting in the collision of cars, the railroad would have been liable. Detroit, T. & I. R. Co. v. Hahn, 47 Fed. 2d, 59. His intention to dismount

from one car and attempt to reach the hand brake on the third car was fully in keeping with the directions of his superior, the foreman of the switching crew. The defective hand brake on the second car obviously prompted and required the action which he took. As said in New York Cent. R. Co. *v.* Brown, 63 Fed. 2d, 657: "It has long been settled that the chain of causation is not broken by an intervening act which is a normal reaction to the stimulus of a situation created by negligence, and such normal reaction has been held to include the instinct toward self-preservation, Stott *v.* Shepard, 2 W. Bl. 892 (the lighted squib case), and the equally natural impulse to rush to others' assistance in emergency. . . This rule of causation has been repeatedly recognized by this court." (Citing.) The petitioner dismounted a few feet from a switch stand, and to avoid running into it he wheeled around, and in doing so wrenched and damaged his back in described particulars. It is argued by counsel for the defendant in error that it is not shown that the conditions were not such that he could not have seen the switch stand while dismounting or after reaching the ground in time to have avoided it. It must be remembered, however, that in an emergency one is not held to the same accuracy of judgment as would be required of him if he had time for deliberation. *Central of Georgia Ry. Co.* v. *Barnes,* 46 *Ga. App.* 158 (1-c) (167 S. E. 217); *Morrow* v. *Southeastern Stages,* 68 *Ga. App.* 142 (22 S. E. 2d, 336); *Savannah Electric & Power Co.* v. *Russo,* 71 *Ga. App.* 397 (31 S. E. 2d, 87). Thus it will be seen that it cannot be said as a matter of law that the petitioner was negligent in the manner in which and the time when he dismounted and placed himself in a position where sudden turning or wheeling was necessary to avoid the switch stand. But, apart from this consideration, recovery would not be defeated merely because of negligence of the petitioner which was not the sole and proximate cause of his injury, since the statute provides that recovery may be had if the defendant's negligence contributes in part to the injury. As said in Coray *v.* Southern Pac. Co., 335 U. S. 520 (69 Sup. Ct. 275, 93 L. ed. 243): "And this act, fairly interpreted, must be held to protect all who need protection from dangerous results due to maintenance or operation of congressionally prohibited defective appliances. Fairport P. & E. R. Co. *v.* Meredith, 292

U. S. 589, 597 (54 Sup. Ct. 826, 78 L. ed. 1446). Liability of a railroad under the Safety Appliance Act for injuries inflicted as a result of the act's violation follows from the unlawful use of prohibited defective equipment 'not from the position the employee may be in, or the work which. he may be doing at the moment he is injured.' Brady *v.* Terminal R. Assn., 303 U. S. 10, 16; Louisville & N. R. Co. *v.* Layton, 243 U. S. 617, 621. . . The statute declares that railroads shall be responsible for their employees' deaths 'resulting in whole or in part' from defective appliances such as were here maintained. 45. U. S. C. A., § 51. . . Congress has thus for its own reasons imposed extraordinary safety obligations upon railroads and has commanded that if a breach of these obligations contributes in part to an employee's death, the railroad must pay damages. These air-brakes were defective; for this reason alone the train suddenly and unexpectedly stopped; a motor track car following at about the same rate of speed and operated by an employee looking in another direction crashed into the train; all of these circumstances were inseparably related to one another in time and space. The jury could have found that decedent's death resulted from any or all of the foregoing circumstances." The statute further provides in § 53 that an employee who may be injured (no less than when killed, as was true in the case from which we have just quoted) shall not be held to have been guilty of contributory negligence in any case where the violation by a common carrier in interstate commerce of any statute enacted for the safety of employees, as here, contributed to the injury of the employee. In such circumstances there would be no diminishing of the amount of recovery because of any contributing negligence of the employee.

The allegations of the petition show that the defendant maintained and operated a car with defective hand brakes in violation of the statute, and a jury would be authorized to find that this defective condition was inseparably connected with and induced the act of the employee which resulted in his injury. It follows that the court erred in sustaining the general demurrer to count two of the petition as amended.

*Judgment reversed. All the Justices concur.*