45797, 45798.   KNIGHT v. LOWERY (two cases).

Argued January 11, 1971—Decided June 16, 1971—
Rehearing denied July 8, 1971—Cert. applied for.

*Levy, Askew, Warfield, Graff & Mabie, Lefferts L. Mabie, Jr., Colson & Hicks, Jay, Garden & Sherrell, Clayton Jay, Jr.,* for appellants.

*Divine, Busbee & Wilkin, George D. Busbee, Watson, Keenan, Spence & Lowe, G. Stuart Watson,* for appellee.

EBERHARDT, Judge. Although the affidavit in opposition to the motion for summary judgment and the issues argued in this court call into question the soundness of our decisions in *Edmondson v. Hancock,* 40 Ga. App. 587 (151 SE 114) (insofar as it stands for the proposition that a release given only to the original tortfeasor effects, by operation of law, the release of a physician negligently aggravating the injuries) and in cases such as *Caplan v. Caplan,* 62 Ga. App. 577 (9 SE2d 96), *Gorman v. Griffin,* 70 Ga. App. 585 (28 SE2d 897), *City of Buford v. Hosch,* 104 Ga. App. 615 (122 SE2d 287) and others (insofar as they stand for the proposition that a release given only to one tortfeasor effects, by operation of law, the release of another even though the two did not act in concert in furtherance of a common purpose or design), we conclude that the judgment below must be affirmed, not under the rationales of the cited cases, but purely as a matter of contract law.

Three New York cases, reaching varying results on varying bases, bring the matter into focus. In Milks v. McIver, 264 N. Y. 267 (190 NE 487), the infant plaintiff was injured in an automobile accident and taken to a hospital for treatment. After her discharge her guardian ad litem executed a release to the owner and operator of the automobile involved, and then brought an action for damages sustained through negligent treatment while in the hospital. The attending physician moved to dismiss the complaint on the grounds that the claims against him had also been released, and the New York court affirmed the granting of the physician's motion. Noting that the *original wrongdoer is liable for the negligence of the physician in aggravating the injuries*, the court stated, through Judge Lehman: "It may be argued that the original wrongdoer who caused the injury and the physician whose negligence aggravated the injury are not, in technical sense, joint tort-feasors. Nevertheless their *wrongs coalesced* and resulted in damage which would not have been sustained but for the original injury." P. 269. (Emphasis supplied).

Twenty-eight years later, in Derby v. Prewitt, 12 N. Y. 2d 100, 102 (187 NE2d 556), the same court was "called upon to decide whether a general release given by the plaintiff to the wrongdoer who caused her initial injuries also releases the physician who negligently treated those injuries," the very same question it had decided before. While in the Derby case the court collected much of the criticism of the joint tortfeasor-release rule, the majority chose to sidestep, over dissent, Judge Lehman's obvious analogy to, and extension of, the release rule, and declined to follow the Milks case by holding (p. 106): "Since, therefore, neither the joint tort-feasor doctrine nor the reasons underlying it are here applicable, we may not say, as a matter of law [on motion for summary judgment], that the release executed by the plaintiff bars the present action. In the light of our analysis, the question for resolution, and it is to be decided as an issue of fact upon a trial, is whether the plaintiff's settlement with the taxicab driver [released tortfeasor] did actually constitute satisfaction of all damages caused by his wrong or was intended as such. If it did, or was so intended, no claim remained against the doctor. But, if it did not reflect full satisfaction, and was not so regarded—and the burden of proving

this essential fact rests upon the plaintiff—the release will not prevent recovery against the doctor."

In the context here, the important point to note about these two cases is that the releases were executed only in favor of the named original tortfeasors and did not, by their terms, extend to the physician or to mankind in general, insofar as the court's treatment of the releases reveals. The New York court either did (Milks v. McIver, 264 N. Y. 267, supra) or did not (Derby v. Prewitt, 12 N. Y. 2d 100, supra) extend the benefit of the releases to third parties by indulgence in legal metaphysics, and not by application of contract principles. In contrast, the opinion in Oxford Commercial Corp. v. Landau, 12 N. Y. 2d 362 (190 NE2d 230, 13 ALR3d 309), authored by Judge Fuld, who had written for the majority only four months earlier in Derby v. Prewitt, 12 N. Y. 2d 100, supra, proceeded on an entirely different basis, for in the Landau case the wording of the release was critically different from that in the Derby case.

In the Landau case the plaintiff corporation discovered that Carlin, one of its directors, had been siphoning off its assets. A settlement was agreed upon, and the corporation, "in addition to 'releasing' Carlin, agreed that it would not bring 'any suit, *against any person whomsoever'* except those specifically named." P. 364. (Emphasis supplied). The corporation then sued its accountants, alleging, inter alia, that they had aided and abetted Carlin. The accountants moved for summary judgment, contending, inter alia, that they were donee beneficiaries of the corporation's promise not to sue "any person whomsoever" and that the parol evidence rule prohibited the introduction of oral testimony to prove otherwise. In opposition, the corporation maintained that it was entitled to show that the parties to the agreement did not contemplate that the promise was to inure to the benefit of the accountants. In agreeing with the accountants' contentions and reinstating the trial court's grant of summary judgment to them, the court asserted (p. 365): "It is too well settled for citation that, if a written agreement contains no obvious or latent ambiguities, neither the parties nor their privies may testify to what the parties meant but failed to state. Although it is sometimes broadly observed that the parol evidence rule has no application to any except parties to the

instrument [citations omitted], it is clear that in the case of a fully integrated agreement, where parol evidence is offered to vary its terms, the rule operates to protect all whose rights depend upon the instrument even though they were not parties to it. [Citing, inter alia, 3 Corbin, Contracts, § 596 (1960); 4 Williston, Contracts, § 647 (3d Ed., 1961); 9 Wigmore, Evidence, § 2446, p. 150 (3d Ed. 1940)]. In the case before us, the [corporation's] agreement not to sue 'any person whomsoever' except those specifically named is too clear and precise to admit of evidence that the parties intended to exclude the [accountants] from this all-inclusive category. [Citations omitted]. It is the very definiteness of the language employed concerning the parties to be relieved of liability which differentiate the present from cases such as Derby v. Prewitt, 12 N. Y. 2d 100."

Other authorities are in accord with the proposition that a general release to all whomsoever bars further suits against other entities involved in the occurrence which produced the settlement with one participant that led to the release. In Peters v. Butler, 253 Md. 7 (251 A2d 600), decided under the Uniform Contribution Among Tortfeasors Act which, as adopted in Maryland, provided that a release of one tortfeasor " 'does not discharge the other tortfeasors unless the release so provides,' " it was held that a release given to an automobile driver who struck a low brick wall marking the boundary of an apartment house parking lot, causing it to collapse on plaintiff's leg, also released the apartment owner which maintained the wall on its grounds, even though the owner paid nothing for the release and was not expressly named therein, since the instrument also released, as in the present case, " 'all other persons, firms or corporations liable or who might be claimed to be liable . . . on account of all injuries, known and unknown . . . which have resulted or may in the future develop' from the accident," and further provided, as in the present case, "that it was executed 'for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident.' "

In Panichella v. Pennsylvania R. Co., 268 F2d 72 (CA 3), cert. den. 361 U. S. 932 (80 SC 370, 4 LE2d 353)), the railroad directed its employee to go to a restaurant, eat breakfast, and bring back

lunch for other employees. While enroute the employee slipped and fell on an icy sidewalk abutting Warner Brothers' property. Warner Brothers' insurance company negotiated a settlement with the employee, and the latter released Warner Brothers and all other persons, firms and corporations of and from any and all claims, etc., arising by reason of the accident. The court held that the release barred the employee's F. E. L. A. claim against the railroad, although it was not named in the release and had no knowledge of the settlement or of the release until over a month after its execution. Commenting upon this case in Canillas v. Joseph H. Carter, Inc., 280 FSupp. 48 (SD NY), Judge Bryan, in discussing the three rules as to joint tortfeasors—the common law rule that a release to one releases others, the Restatement[1] rule that a release to one releases all unless there is a reservation of right, and the Uniform[2] rule that the release of one does not discharge others from liability unless the release so provides—said of the Panichella release: "There, the release . . . expressly provided for the discharge of all other persons, firms and corporations from liability, and thus was a bar under any of the three rules which have been mentioned." 280 FSupp. 48, 53.

In Hasselrode v. Gnagey, 404 Pa. 549 (172 A2d 764), also decided under the Uniform Act, supra, note 2, Hasselrode sustained injuries when Carnegie's automobile, in which he was a passenger, collided with a dairy company truck. Hasselrode executed a release to Carnegie discharging him and "any and all other persons . . . from any and every claim" resulting from the collision. In holding that the quoted language also released the dairy company (two justices dissenting), the Pennsylvania Court stated (p. 552): "The intent of the parties must be gleaned from the language of the release: such language clearly and unequivocally shows the intent of the parties that Hasselrode was releasing his claims not only against Carnegie but against 'any and all' persons, including the Dairy Company, involved in the accident of August 24, 1956." In commenting on this case, Corbin states: "All such persons enjoy

[1]Restatement, Torts § 885 (1939).

[2]Uniform Contribution Among Tortfeasors Act, § 4, 9 ULA 242 (1939 Act); 9 ULA, 1967 Supp. p. 132 (1955 revised act).

the benefits of a release for which they gave nothing, and of which they knew nothing, as third party donee beneficiaries. And this rule was adopted and applied in a jurisdiction (England) that even today denies that any one not in 'privity' can be a third party beneficiary of any contract." 4 Corbin on Contracts § 931, 1964 Supp. n. 72, p. 226.

Other cases in accord are Bonar v. Hopkins, 311 FSupp. 130, applying West Virginia and Pennsylvania law, and Morison v. General Motors Corp., 428 F2d 952 (CA 5), decided under Arkansas law. Compare Paclawski v. Bristol Laboratories, Inc., 425 P. 2d 452 (S. Ct. Okl.), also applying Arkansas law, but holding that the "all other persons" clause was not effective where qualifying language (not included in the release here) was inserted into the release.

Also in accord is 17 AmJur2d 740, Contracts, § 313: "Where the third-person beneficiary or beneficiaries are so described as to be ascertainable, it is not necessary that he or they be named in the contract in order to recover [or rely] thereon. Indeed he may be one of a class of persons, if the class is sufficiently described or designated. In any case where the person to be benefited is in any manner sufficiently described or designated, he may sue [or defend] upon the contract, in the absence of any manifestation of a contrary intention. The fact that the particular person who was to benefit from the promise was not known when the promise was made is generally held to be immaterial. The third party need not be ascertained or known at the inception of the contract to entitle him to the benefits thereof. In other words, although the beneficiary must be identified before he has an enforceable right as a third-party beneficiary of a contract, it is not necessary that he should be identified or identifiable at the time the contract is made." And see 17A CJS 947, Contracts, § 519; Annots. 81 ALR 1285; 148 ALR 359.

Contracts for the benefit of third persons have statutory sanction in this jurisdiction (Code Ann. §§ 3-108, 20-306), and the cited authorities, while not binding, are sufficiently persuasive to lead us to the conclusion that Dr. Lowery is entitled, as a donee beneficiary, to rely upon the release in question and to invoke the parol evidence rule to prevent its variance. While plaintiffs argue

that in reaching this conclusion we would also be holding that the language of the release forever discharging "all other persons . . . liable or who might be claimed to be liable . . . from any and all claims . . . of any kind or nature whatsoever . . . " would forever release everyone for any injury or damage which could result to plaintiffs at any time in the future from any cause whatsoever, whether related to the accident in question or not, we cannot, and do not, so hold. We agree with defendant that this is not the law or the effect of the release. Plaintiff's assumption is reached from a quotation of only a portion of the language of the release, and the instrument must be read as a whole; portions (in this instance a portion of a sentence) cannot be read out of context to determine its meaning.

Accordingly we do not construe the release here involved as discharging other persons from claims "of any kind or nature whatsoever," but only from claims for "all injuries, known and unknown . . . which have resulted or may in the future develop from" the described accident. Since an original tortfeasor is liable under principles of proximate cause for a physician's negligent aggravation of the original injury (Annot., 100 ALR2d 808; 22 AmJur2d, 163, Damages, § 113), the alleged malpractice injury complained of here is clearly one which proximately resulted from the accident caused by the negligence of the released tortfeasors, and it had occured prior to the execution of the release. Dr. Lowery thus falls within the donee beneficiary classification of "all other persons . . . claimed to be liable . . . on account of all injuries, known and unknown. . . which have resulted or may in the future develop from" the described accident.[3]

---

[3]If the physician "aggravates" the original injury, he is placed in the beneficiary class by operation of law; if, however, the physician inflicts a "new" or "separate and independent" injury, proximate cause theories would not allow him to be placed in the class. See *Piedmont Hospital v. Truitt,* 48 Ga. App. 232; annots., 40 ALR2d 1075, § 4; 100 ALR2d 808. Comparing the two annotations, note that when the question is simply whether the original tortfeasor, in a suit against him, is also liable for the physician's negligence, the courts have little or no trouble with proximate cause

Plaintiffs contend, however, that the release must be read in conjunction with the petition and order in the court of ordinary approving the compromise settlement, which had reference only to the settlement of the automobile claim against the Bolings and not to any possible claim against Dr. Lowery, which was unknown at the time. The argument is that Mr. Knight, as guardian, could not exceed the authority given him by the ordinary's order, and further that the parties must have intended to settle only the automobile claim since this was the only contested, doubtful claim in existence at the time.

The difficulty with this line of argument is that a duly qualified guardian may negotiate a settlement of his ward's contested or doubtful tort claims without an order from the court of ordinary, and it is conclusive until set aside. *Campbell v. Atlanta Coach Co.,* 58 Ga. App. 824 (200 SE 203). No order being required, the guardian could exceed the authority it purportedly conveyed. If, as the guardian seems to suggest, he had no authority under *Code* § 49-219 to compromise his ward's claim against Dr. Lowery because it was not "contested or doubtful" at the time the release was executed, a direct proceeding on behalf of the ward to set the release aside as to Dr. Lowery would appear to be necessary. See *Campbell v. Atlanta Coach Co.,* 58 Ga. App. 824, supra, and cases cited. This has not been accomplished, however, nor have plaintiffs, individually or as guardian, obtained a voluntary reforma-

---

and hold the original tortfeasor liable for subsequent medical negligence. However, when a court is faced with a precedent holding that a release of the original tortfeasor operates in law also to release, by analogy to the joint tortfeasor doctrine, negligent medical personnel, the courts struggle mightily to find a "new" or "independent" injury which breaks the causation chain so that the medical personnel are not sheltered by the release. *Piedmont Hospital v. Truitt,* 48 Ga. App. 232, 172 SE 237), escaping the ruling in *Edmondson v. Hancock,* 40 Ga. App. 587, 115 SE 114), and annot., 40 ALR2d 1075, § 4, reflect the confusion in this area. No "new" or "independent" injury was inflicted by the doctor here— only a failure to discover or to diagnose and treat an existing condition is charged.

tion of the instrument (see *Roy v. Ga. R. & Bkg. Co.,* 24 Ga. App. 86 (100 SE 46); *Ga. R. & Bkg. Co. v. Roy,* 147 Ga. 349 (94 SE 218); *Seaboard Constr. Co. v. Clifton,* 121 Ga. App. 247 (173 SE2d 436)), nor have they, in this action, sought to have the release reformed, canceled, or set aside as to Dr. Lowery on the grounds of his alleged misrepresentations as to the boy's medical condition (see *Bass v. Seaboard A. L. R. Co.,* 205 Ga. 458 (53 SE2d 895)) nor on any other grounds. In oral arguments before this court appellant conceded that there was no fraud in the obtaining of the release, and that no fraud is charged against Dr. Lowery. Hence, we see no alternative but to take the release as we find it and to hold that it protects Dr. Lowery as a donee beneficiary.

*Judgments affirmed. Hall, P. J., concurs. Whitman, J., concurs in the judgment.*