A97A1580. SUPERIOR INSURANCE COMPANY v. DAWKINS.
A97A1581. JENKINS et al. v. DAWKINS.
A97A1582. STATE AUTOMOBILE MUTUAL INSURANCE
COMPANY v. DAWKINS.
(494 SE2d 208)

SMITH, Judge.

These three related cases involve the much litigated question of the effect of a release given in settlement with fewer than all parties in an automobile personal injury action. Because the record contains evidence of a mutual mistake of law as to the effect of the release on a

non-party to the agreement, we affirm the trial court's denial of summary judgment as to that issue in Case No. A97A1582. We conclude, however, that the trial court erred in denying summary judgment to the parties to the settlement and release, and we therefore reverse the trial court's denial of summary judgment in Case Nos. A97A1580 and A97A1581.

Jane Dawkins was involved in an automobile accident with Quincy Jenkins. Dawkins's husband handled negotiations on her behalf with Superior Insurance Company ("Superior"), the insurer for Jenkins and his mother, the car's owner. Mr. Dawkins informed the insurance adjuster for Superior that Dawkins intended to pursue a claim against State Automobile Mutual Insurance Company ("State Auto"), her underinsured motorist carrier, because Dawkins's medical expenses exceeded Superior's available coverage.

According to the Dawkinses, the adjuster assured them that the Superior release would not affect their claim against State Auto. The adjuster sent a letter to the Dawkinses enclosing a release and a copy of a new legislative act, Ga. L. 1994, p. 1156, now OCGA § 33-24-41.1 as amended.[1] The letter stated: "Please review these documents. As we read the law we may settle with you for our policy limits, and this should not prevent you from persuing [sic] an underinsured motorist claim against your own insurance carrier. Please review these documents."

Mr. Dawkins acknowledged that Superior's adjuster never held herself out as an attorney and did not give legal advice. He discussed the release with his own insurance agent, who "said he didn't know. He said, if you've got a law, it's the law. He said, I don't know everything." Mr. Dawkins also admitted that he did not read the release "word for word," that he knew the letter was only the adjuster's opinion, and that he knew she was not acting on his behalf in any way but represented an adverse party. He testified that Superior's adjuster did not withhold any information, did not try to deceive him, and tried to help. Finally, Mr. Dawkins acknowledged that under the settlement, he and Mrs. Dawkins would obtain all the insurance coverage available from Superior, and that Superior had no obligation to pay any additional sums on behalf of its insured. The Dawkinses signed the release and accepted the money.

The release provided by Superior and signed by the Dawkinses expressly states, however, that it is a general "Release of All Claims" releasing the Jenkinses "and all other persons, firms, and corpora-

---

[1] This Code section allows claimants involved in a motor vehicle accident to execute a limited release in favor of a tortfeasor's insurance carrier while preserving a claim against their own underinsured motorist carrier. See generally Chance & Middleton, Legislative Review, Insurance, 11 GSU L. Review 200 (1994).

tions, of and from any and all claims" arising from the collision, rather than the limited release provided for by OCGA § 33-24-41.1 (a) and (b). Upon learning of this general release, State Auto denied Dawkins's underinsured motorist claim. Dawkins then brought this action making a tort claim against the Jenkinses, a claim against Superior for erroneous legal advice, and a claim against State Auto for underinsured motorist benefits as well as bad faith reliance on the Superior release. All three defendants moved for summary judgment. The trial court, without stating its reasons other than that genuine issues of material fact remained for trial, refused to grant summary judgment to the insurers or to the Jenkinses. We granted the defendants' application for interlocutory appeal.

1. State Auto contends that the general release given to the Jenkinses and Superior bars Dawkins's underinsured motorist claim against it, relying on the principle that a general release in favor of an underinsured tortfeasor and his liability carrier operates to bar the claimant from recovering against an underinsured motorist policy. *Darby v. Mathis*, 212 Ga. App. 444, 445-447 (2) (441 SE2d 905) (1994). But this contention does not reach the dispositive issue here: whether Dawkins and Superior intended the provisions of OCGA § 33-24-41.1 to apply to the release.

State Auto also relies on the general principle that "[n]o fiduciary relationship exists between one having a claim against an insured and the agent of a liability carrier who seeks settlement of the claim, and a release obtained by him from a party having a claim for damages is binding, *even if the statements and representations made by him relative to liability or nonliability for the damages were incorrect or based upon erroneous reasons*, unless he has prevented the claimant from making investigation of his legal rights in the premises. [Cits.]" (Emphasis supplied.) *Wheat v. Montgomery*, 130 Ga. App. 202, 203 (3) (202 SE2d 664) (1973). But *Wheat* and similar decisions involve allegations of erroneous or fraudulent representation on the part of the insurer alone and failure to investigate on the part of the claimants; this is unilateral rather than mutual mistake.

We do not find applicable, however, the principle of mutual mistake of fact as set forth in *Eubanks v. CSX Transp.*, 223 Ga. App. 616 (478 SE2d 387) (1996), cited by Dawkins. This Court found evidence there of a mutual mistake of fact regarding whether Eubanks and his employer intended a release to include two separate incidents occurring in 1988 and 1990. The release itself recited that it was a settlement and release of all claims arising out of the 1988 incident, but also contained more general language releasing any and all claims arising before the date of the release, which was signed shortly after the 1990 incident. Eubanks's employer then attempted to rely on this general language to bar the pending claim for the 1990

48

incident, although that incident was not explicitly mentioned in the release. Id. at 617. On the basis of the internal conflict in the release, as well as testimony that the claimant and his employer's adjuster calculated damages and negotiated the agreement intending it to apply only to the 1988 incident, this Court found evidence of a mutual mistake of fact regarding the scope of the release. Id. at 618-619.

In contrast to the mistake of fact in *Eubanks*, which concerned the contents and scope of the release, the amount of damages, and whether the parties intended to include one incident or two, the claimed mutual mistake here appears to be purely a mistake of *law*. The parties do not disagree with the contents of the release, the incident to which it refers, the amount of the settlement, or other relevant facts. Instead, the disagreement centers around the parties' understanding of an act of the General Assembly and its effect on the legal consequences of the release agreement.

OCGA § 23-2-22 provides: "An honest mistake of the law as to the effect of an instrument on the part of both contracting parties, when the mistake operates as a gross injustice to one and gives an unconscionable advantage to the other, may be relieved in equity." OCGA § 23-2-23 provides for similar relief when a draftsman or other agent makes a mistake of law.[2]

This Code section has been applied by the Supreme Court of Georgia to a dispute between a claimant and multiple insurers with facts virtually identical to those here. In *Fulghum v. Kelly*, 255 Ga. 652 (340 SE2d 589) (1986), the claimant settled with the insurer for the driver of the car in which her decedent was a passenger. Evidence was presented that the agent for that insurer believed the general release he provided would bar only legal action against his company. The driver and owner of the other car involved in the collision asserted the general release as a defense and moved for partial summary judgment. The trial court denied the motion on the ground that the parties to the release were "honestly mistaken as to the legal effect of the instrument." Id. at 653. The Supreme Court agreed that OCGA § 23-2-22 applied and affirmed, while noting that "the power in equity to relieve mistakes should be exercised with caution, and the evidence shall be clear, unequivocal and decisive as to the mistake. OCGA § 23-2-21." Id. at 654.[3] Compare *Chitwood v. Southern*

---

[2] OCGA § 23-2-27, relied upon by appellants, simply states that ignorance of the law by *a* party (not a mutual mistake by both) shall not authorize the intervention of equity. Like the *Wheat* decision, supra, this Code section has no application to a mutual mistake of law by both parties.

[3] *Fulghum* has been disapproved on other grounds, *Posey v. Med. Center-West*, 257 Ga. 55, 56 (354 SE2d 417) (1987), but the analysis of OCGA § 23-2-22 remains sound. See, e.g., *Morris v. Chandler Exterminators*, 200 Ga. App. 816, 819 (409 SE2d 677) (1991), rev'd on

*Gen. Ins. Co.*, 189 Ga. App. 697, 700-701 (377 SE2d 210) (1988) (unilateral mistake rather than mutually unintended legal consequence of release).

The evidence in this litigation suggests that Superior's adjuster and claims manager misunderstood the law and its effect on the release signed by Dawkins. In her deposition, the adjuster acknowledged that she believed the new law would supersede the release language and allow a partial settlement. Since the record suggests that State Auto would be fortuitously relieved of its contractual obligation to provide underinsured motorist coverage to its insured and Dawkins would be deprived of that coverage, some evidence has been presented of "gross injustice" and "unconscionable advantage" within the meaning of OCGA § 23-2-22. This evidence of a mutual mistake of law is sufficient to forestall summary judgment, and such a mistake of law, if proved clearly, unequivocally, and decisively, would warrant a reformation of the release under *Fulghum* with respect to its effect on the obligations of State Auto. Accordingly, the trial court's denial of summary judgment to State Automobile Insurance Company in Case No. A97A1582 is affirmed.

2. While we find the denial of summary judgment appropriate regarding the effect of the release on State Auto, a nonparty to the agreement, we find that the trial court erred in denying summary judgment to the Jenkinses. If an alleged mutual mistake of law regarding the effect of the release on State Auto is proved, the proper remedy under *Fulghum* is reformation to reflect the intentions of the parties. *Fulghum*, supra at 654. The record shows without dispute that the Dawkinses intended to settle with Superior for its policy limits and release its insureds, the Jenkinses, from any further liability. There is no allegation of a mistake of fact or of law as to the effect of the release on the parties named in it, and as to them it remains binding. The trial court erred in denying summary judgment to the Jenkinses in Case No. A97A1581.

3. Because the release is effective as to the Jenkinses, it also releases their insurer, Superior, from any obligation on the underlying personal injury claim. "The general rule is that because there is no privity of contract, a party may not bring a direct action against the liability insurer of the party who allegedly caused the damage unless there is an unsatisfied judgment against the insured or it is specifically permitted either by statute or a provision in the policy. None of those exceptions is present." (Citation and punctuation omitted.) *McKin v. Gilbert*, 208 Ga. App. 788, 790 (432 SE2d 233) (1993).

Dawkins's contention that Superior must remain a party in

other grounds but aff'd as to this issue, 262 Ga. 257, 259 (4) (416 SE2d 277) (1992).

order to determine the legal effect of the release is without merit. In *Fulghum*, supra, neither the insurer which prepared the release nor its adjuster was a party to the litigation, and their testimony, as here, was preserved in the record. The Supreme Court did not find their presence necessary to its decision.

Superior is also correct in its assertion that Dawkins's purported claim for erroneous legal advice has no basis in fact or in the law. Mr. Dawkins testified that Superior's adjuster did not hold herself out to him as an attorney or give him legal advice, and that he knew she was not acting on his behalf in any way but represented an adverse party. He also acknowledged that Superior's adjuster did not withhold any information or try to deceive him, and he stated that she tried to help him. Under these undisputed facts, it is apparent that no legal advice was given to the Dawkinses by Superior's adjuster.

Moreover, if a cause of action for erroneous legal advice indeed exists, it must be based upon some duty owed by Superior to Dawkins. Dawkins and Superior had no employment, contractual, or other relationship on which such a duty could be based; their only connection is the circumstances of the injury and Dawkins's status as an injured person claiming under Superior's policy. And " '[i]t is clear that no fiduciary relationship exists between one having a claim against an insured and the agent of a liability carrier who seeks settlement of the claim.' " *Fincher v. Dempsey*, 209 Ga. App. 222, 223 (433 SE2d 78) (1993). The trial court erred in denying summary judgment to Superior Insurance Company in Case No. A97A1580.

*Judgment affirmed in Case No. A97A1582. Judgments reversed in Case Nos. A97A1580 and A97A1581. McMurray, P. J., and Beasley, J., concur.*

DECIDED OCTOBER 28, 1997.

*Brennan & Wasden, Marvin W. McGahee, James V. Painter*, for appellant (case no. A97A1580).

*Allgood, Childs, Mehrhof & Millians, Michael W. Millians*, for appellants (case no. A97A1581).

*Fulcher, Hagler, Reed, Hanks & Harper, Ronald C. Griffeth, Elizabeth McLeod*, for appellant (case no. A97A1582).

*Jimmy D. Plunkett*, for appellee.