## A00A0851. OWENS v. AMERICAN REFUSE SYSTEMS, INC. et al.
(536 SE2d 782)

BARNES, Judge.

William Owens sued American Refuse Systems, Inc. ("ARS"), Waste Management Partners, Inc. ("Waste Management"), John Bellamy, Jr., and Continental Casualty Company ("CNA"), alleging that ARS destroyed a pressure tank which ARS owned, but had promised to keep safe for Owens, so that he could pursue a product liability case against a third party. Because ARS destroyed the tank, he contends that he had to dismiss his product liability case, which left the defendants responsible for damages due to spoliation of evidence, breach of contract based on promissory estoppel, and negligence, among other claims. The trial court granted summary judgment to all defendants, and Owens appeals. For the reasons that follow, we affirm.

Owens suffered an eye injury in October 1993 when the cap blew off a pressure tank used to clean the inside of the garbage truck to which it was attached. When Owens was injured, he worked for ARS, which later became a wholly owned subsidiary of Waste Management.

An ARS employee and an independent mechanic testified that, while the truck was being repaired in June 1995, an unknown person severed the truck's airline and removed the pressure tank that caused Owens' injury. Another witness employed by a different waste facility testified that he saw an ARS truck driver dump a tank resembling the one that injured Owens and that later that day the tank was hauled away with other trash to a scrap yard in Winder. Owens became aware that the tank had been removed and contacted his lawyer, who, in turn, contacted ARS's lawyer. ARS retrieved it from the Winder scrap yard shortly thereafter.

In October 1995, ARS, through its insurer CNA, settled Owens' workers' compensation claim. Also in October 1995, Owens brought a product liability suit against the tank's manufacturer. The tank remained in ARS's possession until sometime in February or March 1996, when ARS sold it for scrap metal.

The trial court concluded that Georgia does not recognize spoliation of evidence as a separate tort and that even under the foreign authority Owens cited, he would be "unable to show any injury or any damages from the loss of the tank" because he voluntarily dismissed his product liability case. The trial court also found that all of Owens' other causes of action failed because no evidence established that the defendants had a legal duty to preserve the tank.

1. On appeal from the grant of summary judgment, this Court conducts a de novo review of the record, construing the evidence and all inferences therefrom in favor of the nonmoving party. *Maddox v.*

*Southern Engineering Co.*, 231 Ga. App. 802-803 (500 SE2d 591) (1998). Further, a judgment right for any reason must be affirmed. *Simmons v. Boros*, 255 Ga. 524, 525 (341 SE2d 2) (1986).

2. Owens argues that the trial judge erred in concluding that Georgia does not recognize spoliation of evidence as a separate tort. We find no error. In *Gardner v. Blackston*, 185 Ga. App. 754, 755 (1) (365 SE2d 545) (1988) (physical precedent only), we stated in dicta that Georgia law does not recognize spoliation of evidence as a separate tort. We again looked at the issue of spoliation as an independent tort in *Sharpnack v. Hoffinger*, 231 Ga. App. 829 (499 SE2d 363) (1998). We noted that the tort has been recognized in some jurisdictions, including California, Florida, and Alaska, and not recognized in others. We further noted that

> [t]he underlying goal of the spoliation tort and related theories is to provide a remedy for prejudice to an opportunity to obtain compensation for the injuries upon which the underlying litigation is predicated. In other words, the spoliation tort involves interference with the opportunity to win a lawsuit.

Id. at 831. However, because the court had already determined that the plaintiff in *Sharpnack* assumed the risk of his injury, he could not establish a meaningful link between his underlying claims and the alleged spoliation. Therefore we affirmed the trial court's grant of summary judgment to the defendant.

We join the majority of jurisdictions and decline to recognize an independent third-party tort of evidence spoliation in this case.[1] A vigilant litigant already has traditional means of securing evidence available. Those means include, for example, a court order directing preservation, along with remedies for a violation of that order, or a contractual agreement with the property owner. Therefore, the trial court did not err in granting summary judgment to the defendants on Owens' evidence spoliation claim. See *Sharpnack v. Hoffinger*, supra, 231 Ga. App. at 830-831.

3. Owens further contends that he is entitled to pursue his promissory estoppel claim against ARS, Waste Management, and CNA. He asserts that two letters exchanged between his attorney and ARS's attorney support his contention that the parties had an agreement wherein ARS promised to keep the pressure tank safe, and Owens relied on that promise.

On July 6, 1995, less than a month after the pressure tank that

---

[1] See Rubin, Tort Reform: A Call for Florida to Scale Back Its Independent Tort for the Spoliation of Evidence, 51 Fla. L. Rev. 345, 355 (April 1999).

caused Owens' injury first disappeared and was then retrieved, Owens' lawyer wrote a letter to the attorney representing ARS in Owens' workers' compensation claim. In the letter, Owens' lawyer asked for possession of the pressure tank and noted that it would serve both parties' interests if ARS secured the tank. In an August 10, 1995 letter to Owens' attorney, the workers' compensation attorney wrote that ARS had secured possession of the air tank and offered to make it available for inspection at a mutually convenient time and place.

The workers' compensation attorney testified that he did not think he wrote the August 10, 1995 letter in response to the July 6, 1995 letter, because Owens' lawyer was "a very persistent person" who would not have let him go a month and four days before confirming that he had the tank.

The workers' compensation attorney further testified that he offered possession of the pressure tank to Owens' attorney in October 1995, when they met with representatives of the defendants in Owens' product liability action, including a defense expert, to inspect the tank at ARS's Athens facilities. Owens' attorney "refused to take the tank as he indicated that he wanted to avoid any appearance of impropriety," the workers' compensation lawyer said. Owens denies his lawyer was offered possession of the tank at the inspection, although his attorney did not submit an affidavit to that effect.

As previously mentioned, ARS sold the tank for scrap in February or March 1996, approximately eight months after the August 10, 1995 letter stating that the "Employer/Insurer" had secured possession and four months after the product liability defendants' inspection.

The threshold issue is whether the August 10, 1995 letter constitutes a contract between the parties. The defendants argue that the terms of the alleged contract are too uncertain to be enforced, pointing to the lack of time frame specified, for example. " 'In accordance with OCGA § 13-3-1, to form a valid contract there must be a subject matter, a consideration, and mutual assent by all parties to all the terms.' " (Citation omitted.) *Green v. Johnston Realty*, 212 Ga. App. 656, 658 (1) (442 SE2d 843) (1994).

OCGA § 13-3-44 (a) created promissory estoppel by statute. For promissory estoppel to be applied, there must be justified reliance. *Fidelity & Deposit Co. v. West Point Constr. Co.*, 178 Ga. App. 578, 579 (1) (344 SE2d 268) (1986). Owens failed to obtain either a discovery order or a written agreement incorporated into a consent order that the tank be indefinitely preserved. Absent a unilateral promise, promissory estoppel does not apply; here, there was no promise to preserve the tank indefinitely. See generally *Mooney v. Mooney*, 235 Ga. App. 117, 119 (1) (508 SE2d 766) (1998); *Johnson v. Fulton*

*County*, 235 Ga. App. 277, 280 (2) (509 SE2d 355) (1998).

In his August 10, 1995 letter, ARS's lawyer merely stated that the tank was secured and offered to make it available to Owens for inspection. There was no agreement to hold the tank for any specified period of time, and ARS's lawyer did not indicate that they were accepting terms proposed by Owens' lawyer. See *Patel v. Gingrey Assoc.*, 196 Ga. App. 203, 205 (2) (395 SE2d 595) (1990); *Peachtree Med. Bldg. v. Keel*, 107 Ga. App. 438 (1) (130 SE2d 530) (1963). The trial court did not err in granting summary judgment to ARS, Waste Management, and CNA on Owens' claim for breach of contract.

4. Owens also asserts that Bellamy is liable to him for breach of contract. Owens claims that, after he told Bellamy in October 1995 that he was concerned about the tank disappearing, Bellamy said, "Don't worry, I assure you that nothing will happen to the tank." Owens then indicated in his affidavit that he "took John Bellamy at his word." However, nothing in the record indicates that Owens and Bellamy agreed to specific terms regarding the tank's security. See *Patel v. Gingrey Assoc.*, supra, 196 Ga. App. at 205; *Peachtree Med. Bldg. v. Keel*, supra, 107 Ga. App. 438. The trial court did not err in granting summary judgment to Bellamy on Owens' claim for breach of contract.

5. In light of our holdings in Divisions 3 and 4 that none of the defendants had a contract with Owens, his claim for tortious interference with contractual rights necessarily fails also.

6. Owens contends that his claims for intentional, wilful and wanton infliction of emotional distress present issues of fact for a jury to determine. We disagree. While Georgia recognizes a cause of action for intentional infliction of emotional distress, "in those cases where recovery has been authorized . . . , the defendant's actions were so terrifying or insulting as naturally to humiliate, embarrass or frighten the plaintiff." (Citation omitted.) *Sanders v. Brown*, 178 Ga. App. 447, 449-450 (1) (343 SE2d 722) (1986). We conclude that disposing of the pressure tank "does not reach this level of 'outrageousness.'" Id. at 450.

7. Owens' claim for inceptive fraud does not present an issue for jury determination either. "When failure to perform a promised act is coupled with evidence that the promisor made the promise with the intention not to perform, inceptive fraud is shown." (Citation omitted.) *Batchelor v. Tucker*, 184 Ga. App. 761, 763 (2) (362 SE2d 493) (1987). Owens has presented no evidence that the defendants entered into any agreements, much less evidence they entered into agreements with the intent not to perform.

8. Owens' remaining enumerations of error regarding his motion to strike portions of an affidavit and objection to the defendants' amending their answer are moot in light of our previous holdings.

*Judgment affirmed. Eldridge, J., concurs. Blackburn, P. J., concurs in the judgment only.*

DECIDED JUNE 30, 2000 

*Gary C. Harris,* for appellant.

*Swift, Currie, McGhee & Hiers, Bradley S. Wolff, Erik S. Rodriguez, McLain & Merritt, M. David Merritt, Thomas J. Melanson, Drew, Eckl & Farnham, Bruce A. Taylor, Jr., Laura V. Benesh,* for appellees.