## A01A2422. CLARK v. BYRD.
## A01A2423. ALLSTATE INDEMNITY COMPANY et al. v. CLARK.
## A01A2424. NESTLEHUTT v. CLARK.
### (564 SE2d 742)

Eldridge, Judge.

Allstate Indemnity Company insured William Nestlehutt with a minimum $15,000 automobile policy when on June 1, 1997, he collided with Louise Clark, causing her serious injuries with over $40,000 in medicals. Clark, the plaintiff, had $100,000 uninsured/ underinsured motorist coverage under her policy with State Auto Property Casualty·Insurance Company. Clark put her U/M carrier on notice. Wanda Byrd was the claims agent for State Auto. Debra Hinds was the claims agent for Allstate.

Both Hinds and Byrd knew from Clark that the Allstate coverage was limited and that Clark intended to make an underinsured claim against State Auto. Clark asked each agent for advice regarding the insurance coverage of the other's policy and how to proceed. Clark indicated to Byrd that she wanted to settle both the insurance claim of Allstate and the underinsured claim of State Auto at the same time, but Byrd told Clark that she would have to settle with Allstate first and exhaust all such coverage before State Auto would pay any underinsured coverage. Byrd did not warn Clark that either a limited release or a simultaneous settlement by Allstate was necessary to avoid releasing State Auto and that a general release of Allstate would also release State Auto from all liability on its underinsured coverage. Hinds did not tell Clark that the general release that she presented to Clark for execution would cause a release of all claims against State Auto upon execution by Clark.

After Clark executed the general release, State Auto denied any liability under the underinsured coverage. Clark sued everyone for fraud and equitable relief. The trial court granted summary judgment for Byrd and State Auto and denied summary judgment as to Allstate, Hinds, and Nestlehutt. Clark appealed, and the other defendants filed their cross-appeals. We reverse the grant of summary judgment as to Byrd and State Auto and reverse as to the denial of summary judgment for the other defendants.

## Case No. A01A2422

1. (a) *Fraud.*

A fiduciary relationship does not exist between an insurer and its insured. "[T]here is no Georgia statute establishing that an accident and liability insurer occupies a fiduciary relationship to its insured. . . . The posture of an insured making a claim against his own insurer does not fall within this definition [of a confidential relationship] but is one of antagonistic interests." *Walsh v. Campbell*, 130 Ga. App. 194, 198 (202 SE2d 657) (1973); see also *Miles v. Great Southern Life Ins. Co.*, 197 Ga. App. 540, 541 (1) (398 SE2d 772) (1990).

Thus, Clark had no legal right to rely upon the representations of Byrd as a fiduciary or confidential advisor as the claims agent of State Auto without the exercise of ordinary diligence to determine the truth of the representations made to her that, until she settled with Allstate, she could receive no underinsured benefits from State Auto. The possible misrepresentation was in part what was stated to her by Byrd, but in larger measure what was not revealed was that a general release of Allstate barred liability of State Auto on its underinsured coverage unless the claims were settled simultaneously. Further, Byrd did not reveal that the only safe course would be to execute a limited release which would preserve Clark's claim against State Auto but release her claim against Allstate.

Fraud or misrepresentations of fact require the plaintiff to prove: (1) that the insurer's agent made a false representation; (2) that at the time, the agent knew it was false, because the insurer had recently litigated the same issue before this Court; (3) that the representations were made to induce Clark to act to execute a general release or refrain from acting to settle the claims at the same time or executing a limited release; (4) that Clark justifiably relied on the representations; and (5) that Clark was damaged by executing a general release that released State Auto's underinsured coverage. *Watson v. Zurich-American Ins. Co.*, 221 Ga. App. 4, 5 (1) (470 SE2d 684) (1996); *Centennial Life Ins. Co. v. Smith*, 210 Ga. App. 194, 195 (435 SE2d 498) (1993). There were some evidence and reasonable inferences supporting each of these issues of disputed fact.

Clark exercised reasonable diligence regarding reliance upon Byrd's representations regarding prior settlement with Allstate being necessary, because she carefully read the release presented by Hinds, made specific inquiry of Hinds as to the effect of the general release of Allstate upon her claim against State Auto, and relied upon Hinds' expertise and apparently objective statements regarding the underinsured claims against State Auto. Allstate was paying out its policy limits and receiving a release for its insured; therefore, a

jury could find that there no longer existed an adversarial position between Clark and Allstate and that Clark could reasonably rely upon the representations of Hinds regarding the effect of the release upon her claims against State Auto as an impartial and experienced insurance claims agent. Thus, the conflict in what Byrd admitted that she told Clark and what Clark testified that Byrd in fact told her created material issues of fact as to actual fraud for jury determination.

(b) *Promissory estoppel.*

The fact that Byrd told Clark she had to settle with Allstate before State Auto would pay under the underinsured coverage could be construed by a jury to amount to a promise that induced Clark to make a substantial change of position by executing the general release with Allstate. While State Auto has a complete legal defense of the general release to underinsured coverage, injustice can be avoided only by the enforcement of a promise to pay underinsured benefits. See OCGA § 13-3-44 (a); *Insilco Corp. v. First Nat. Bank*, 248 Ga. 322 (1) (283 SE2d 262) (1981). The evidence presented by the plaintiff raises issues of fact for jury determination: (1) that Byrd made a promise to settle the underinsured coverage for $85,000 when Clark settled the Allstate claim for policy limits of $15,000; (2) that Byrd should have expected Clark to rely on such promise; (3) that the plaintiff did in fact rely to her detriment on the promise; and (4) that such reliance was reasonable. *Mooney v. Mooney*, 235 Ga. App. 117, 119 (1) (508 SE2d 766) (1998); see also *Owens v. American Refuse Systems*, 244 Ga. App. 780, 782 (3) (536 SE2d 782) (2000); *Pacrim Assoc. v. Turner Home Entertainment*, 235 Ga. App. 761, 766-767 (2) (510 SE2d 52) (1998). Detrimental reliance which causes a substantial change in position will constitute sufficient consideration to support promissory estoppel. *Mooney v. Mooney*, supra at 119. Thus, the issue of promissory estoppel exists for jury determination as to whether State Auto can escape underinsured coverage by inducing conduct through a promise of settlement that probably would provide a complete defense.

(c) Hinds knew that Clark wanted to preserve her underinsurance claim against State Auto. There is no evidence that either Hinds or Allstate intended that the release used would release State Auto. OCGA § 33-24-41.1. Therefore, to avoid a "gross injustice" to Clark that provides no advantage to Allstate but gives an "unconscionable advantage" to State Auto requires the trial court to consider whether the evidence demonstrates such mutual mistake of law that "if prove[n] clearly, unequivocally, and decisively, would warrant a reformation of the release . . . with respect to its effect on the obligations of State Auto." *Superior Ins. Co. v. Dawkins*, 229 Ga. App. 45, 49 (1) (494 SE2d 208) (1997); see also *Fulghum v. Kelly*, 255 Ga.

652, 653 (340 SE2d 589) (1986). Thus, the trial court as a matter of equity should reform the release where the evidence of mutual mistake of law showing the intent of the parties has been demonstrated clearly, unequivocally, and decisively as to the mistake. OCGA § 23-2-21; *Fulghum v. Kelly*, supra at 654.

### Case Nos. A01A2423 and A01A2424

2. *Superior Ins. Co. v. Dawkins*, supra at 49-50, requires that the trial court's denial of the motions for summary judgment as to Allstate, Hinds, and Nestlehutt be reversed, because the evidence shows that the intent of the parties, i.e., Clark, Allstate, Hinds, and Nestlehutt, when they entered into the settlement and release, was to release the insurer and its insured from further liability. Thus, the release as to them will be given its intended effect. Id. at 49-50; see also *Fulghum v. Kelly*, supra.

*Judgment reversed. Miller and Phipps, JJ., concur. Ellington, J., concurs in judgment only. Andrews, P. J., Johnson, P. J., and Ruffin, J., concur in part and dissent in part.*

ANDREWS, Presiding Judge, concurring in part and dissenting in part.

While I concur in Division 2 of the majority opinion and agree that Nestlehutt, Allstate and Hinds were entitled to summary judgment pursuant to *Superior Ins. Co. v. Dawkins*, 229 Ga. App. 45 (494 SE2d 208) (1997), I must respectfully disagree with Division 1, because I believe that Byrd and State Auto were also entitled to summary judgment on Count 4, the fraud count, Division 1 (a); no argument was made below on promissory estoppel, Division 1 (b);[1] and Clark is not entitled to reformation of the release under the facts here, Division 1 (c).

The release signed by Clark on November 11, 1997, stated that

I do hereby release and forever discharge William Nestlehutt and *any other person, firm or corporation charged or chargeable with responsibility or liability*, their heirs, representatives and assigns, from any and all claims, demands,

---

[1] It is a fundamental rule of appellate practice that this Court does not consider arguments which are not argued by the parties before the trial court. See generally *Comer v. Nat. Bank of Ga.*, 184 Ga. App. 867, 868 (3) (363 SE2d 153) (1987). The majority opinion fails to follow this rule by apparently applying a "wrong for any reason" rule, in contravention of the right for any reason rule. See, e.g., *Dunwoody-Woodlands Condo. Assn. v. Hedquist*, 199 Ga. App. 91 (2) (403 SE2d 893) (1991). "It is not the function of an appellate court to cull the record on behalf of a party in search of instances of error. [Cits.]" *Mauldin v. Weinstock*, 201 Ga. App. 514, 517 (3) (411 SE2d 370) (1991).

> damages, costs, expenses, loss of services, actions and causes of action, arising from any act or occurrence up to the present time and particularly on account of all personal injury, disability, property damage, loss or damages of any kind already sustained or that I may hereafter sustain in consequence of an accident that occurred on or about the 1st day of June 1997. . . .

(Emphasis supplied.)

Although the entire policy issued by State Auto to Clark is not contained in the record, the initial page regarding uninsured motorist coverage is, and it provides that "[w]e [State Auto] will pay under this coverage only after the limits of liability under any applicable liability bonds or policies have been exhausted by payment of judgments or settlements."

Therefore, any statements made by Byrd that Clark needed to deal with Allstate first regarding the limits of its policy were correct and could not form the basis for any fraud claim. Further, as Clark acknowledged, when she asked Byrd about her dealings with Allstate, Byrd told her she was not an attorney and could not give her advice. Clark's pleadings state that she did not rely on Byrd's representations. There is nothing in the record to indicate that Byrd even knew the wording of the Allstate release prior to receiving a copy of it in January 1998.[2]

Clark seeks to have the release reformed as to State Auto's liability based on her and Hinds' claimed mutual mistake of law regarding the effect of the release on her ability to bring a claim against State Auto based on *Superior Ins. Co. v. Dawkins*, supra. State Auto and Byrd were entitled to summary judgment on this theory, I believe, because the facts here do not support such a mutual mistake of law. Hinds mailed the release to Clark in West Virginia where it was signed by Clark on November 20, 1997. Clark acknowledged reading the release before signing it and was "hesitant" about the wording of it. Clark also acknowledged that she had in fact already signed the release in West Virginia before she called Hinds to ask whether she could sign the documents and still pursue her claim against State Auto. Therefore, Hinds had made no representation regarding the release before Clark signed it. Further,

> [w]here the parties to a written instrument have equal opportunities and means of knowing the truth concerning the contents and meaning of the instrument, the courts gen-

---

[2] State Auto did not even receive any information from Clark regarding her medical condition and treatment until December 24, 1997.

erally have expected each party to rely upon his own discretion, rather than acting upon the representations of the other side. *Bass v. Seaboard A.L.R. Co.*, 205 Ga. 458, 467 (53 SE2d 895) (1949). Because no fiduciary relationship exists between a claimant and the insured's insurance carrier, a release obtained by the insurance agent is binding on the claimant even if the statements and representations made by the agent were incorrect or erroneous unless the agent by artifice, trick, or fraud prevented the claimant from reading the entire release. *Wheat v. Montgomery*, 130 Ga. App. 202 (202 SE2d 664) (1973); *Conklin v. Liberty Mut. Ins. Co.*, 240 Ga. 58, 60 (239 SE2d 381) (1977).

*Daniel v. Conrad*, 242 Ga. 119, 120 (249 SE2d 603) (1978). See also *Vickers v. Roadway Express*, 210 Ga. App. 78, 79 (2) (435 SE2d 253) (1993); *White v. Lott,* 175 Ga. App. 263, 265 (2) (333 SE2d 118) (1985). Such a conclusion is also consistent with the general rule that

"fraud cannot be predicated upon misrepresentations of law or misrepresentations as to matters of law." [Cits.] The basis for this generally is that everyone is presumed to know the law, and therefore cannot in legal contemplation be deceived by erroneous statements of law. It has been held that this principle of law is especially true where there is no confidential relationship between the parties. [Cits.]

*Dixon v. Dixon*, 211 Ga. 557, 563 (2) (87 SE2d 369) (1955).

Regarding the applicability of *Superior Ins. Co. v. Dawkins*, supra, that case involved different facts. Initially, although the dates of the accident and the signing of the release are not stated in the opinion, those events were obviously much closer in time to the enactment of Ga. L. 1994, p. 1156, OCGA § 33-24-41.1, when uncertainty about its effect and use was apparent. There, Superior's adjuster who sent the release to Dawkins stated that she "believed the new law would supersede the release language and allow a partial settlement." *Superior Ins. Co. v. Dawkins*, supra at 49.

Here, Clark acknowledges that she was troubled by the language of the release, discussed it with her family and accountant, but, nonetheless signed it despite the clear language set out above.

Therefore, I believe there is no basis for reformation of the release regarding Byrd and State Auto and would have affirmed the trial court's grant of summary judgment.

I am authorized to state that Presiding Judge Johnson and Judge Ruffin join in this dissent.

Decided March 28, 2002 —
Reconsideration denied April 10, 2002 — 

*Kenneth C. Pollock*, for Clark.
*William C. Rhodes*, for Byrd.
*Carlock, Copeland, Semler & Stair, Frederick M. Valz III, Boyd B. Newton*, for Allstate Indemnity Company et al.
*Downey & Cleveland, Rodney S. Shockley*, for Nestlehutt.