Brian FISHER, Plaintiff/Appellant,

v.

BAUER CORPORATION, Defendant,

and

Adzick Construction Co., LLC, Defendant/Respondent.

No. ED 89432.

Missouri Court of Appeals, Eastern District, Division One.

Dec. 4, 2007.

Alan S. Mandel, Michael J. Sudekum, Schlueter, Mandel & Mandel, LLP, St. Louis, MO, for appellant.

Kurtis B. Reeg, James G. Nowogrocki, Lynn Ann Lehnert, Reeg & Nowogrocki, L.L.C., St. Louis, MO, for respondent.

KATHIANNE KNAUP CRANE, Presiding Judge.

Plaintiff, an employee of a subcontractor on a construction project, filed a petition to recover damages from the general contractor for personal injuries he suffered when he fell from a ladder borrowed from the general contractor. He also sought damages for spoliation of evidence. The trial court dismissed the negligence claim for lack of subject matter jurisdiction and dismissed the spoliation claim for failure to state a claim. On appeal from this judgment, plaintiff asserts that the trial court erred in dismissing his negligence claim for lack of subject matter jurisdiction because the general contractor was not a statutory employer under Section 287.120 RSMo (2000)[1], and therefore jurisdiction was not exclusively with the Labor and Industrial Relations Commission (the Commission). He also contends that the trial court erred in dismissing his spoliation claim because a cause of action for spoliation does or should exist in Missouri, and he has pleaded facts sufficient to meet all of the elements of the tort of spoliation if it would be recognized. We affirm.

## PROCEDURAL BACKGROUND

On March 28, 2006, plaintiff, Brian Fisher, filed a petition to recover damages on various theories from Bauer Corporation (Bauer) and Adzick Construction Company, LLC (Adzick). He alleged that he was injured while using a ladder manufactured and designed by Bauer and controlled by Adzick. Adzick filed a motion to dismiss four of the five counts against it. Plaintiff did not respond to this motion but voluntarily dismissed Adzick from the four counts, leaving Count V, which alleged that Adzick was negligent in instructing plaintiff to use a defective ladder.

Bauer thereafter filed a motion for summary judgment on the four counts against it. Plaintiff did not respond to this motion but voluntarily dismissed Bauer from the four counts. Adzick then filed a motion to dismiss the remaining negligence count for lack of subject matter jurisdiction on the grounds that Adzick was plaintiff's statutory employer and jurisdiction rested exclusively with the Commission. In support of its motion, Adzick filed the affidavit of its owner, Lance Adzick, a copy of the construction contract between Adzick and U.S. Title Company, Inc. (U.S.Title), a copy of the contract for subcontractor services between Adzick and Welsch Heating and Cooling (Welsch), portions of plaintiff's deposition, and a memorandum of law.

Mr. Adzick averred in his affidavit that Adzick is a general contractor that performs construction and interior remodeling at commercial sites throughout the St. Louis metropolitan area. On a regular and routine basis, Adzick installs and repairs heating and cooling (HVAC) systems as part of its office remodeling work. It also contracts with subcontractors including HVAC subcontractors as part of its usual business to complete the remodeling

---

**1.** All further statutory references are to RSMo (2000).

work. The affidavit and attached exhibits demonstrated that Adzick contracted with U.S. Title to serve as the independent general contractor for an interior remodeling project at 30 Crossroads Plaza, O'Fallon, Missouri 63355. Adzick thereafter entered into a subcontract with Welsch in which Welsch agreed to provide HVAC labor and materials by relocating existing diffusers, replacing filters after construction, and balancing air flow. Welsch's work was to be completed at the U.S. Title site within five days. The affidavit further averred that on August 31, 2005 Adzick was engaged as a general contractor on the U.S. Title site. The U.S. Title offices being remodeled were vacant and not being used by U.S. Title employees or the general public. Adzick had temporary exclusive control over that part of the premises being remodeled. Welsch completed the work at the U.S. Title site and was paid by Adzick for its work. The affidavit additionally averred that if Adzick had not subcontracted with Welsch it would have had to hire regular employees to perform the HVAC work. Adzick also attached to its motion that part of plaintiff's deposition in which he testified that at the time of his injury, he was working as an employee of Welsch at the U.S. Title job site.

In response to Adzick's motion to dismiss, plaintiff filed a memorandum in which he argued that Adzick was not a statutory employer because (1) the job site where plaintiff was injured was not under Adzick's "exclusive control" because other contractors were on the site, and (2) the

work performed on the job site was not within Adzick's "usual business."

After a hearing, the trial court took the motion to dismiss under submission and granted plaintiff leave to file an amended petition. The trial court then dismissed the negligence count for lack of subject matter jurisdiction. Plaintiff filed an amended petition in which he realleged the negligence count and added a count in which he sought damages for Adzick's alleged destruction or loss of the ladder, which, he alleged, was "vital" to his claim against Bauer which he had dismissed without prejudice.

Thereafter, Adzick filed a motion to dismiss the spoliation count. The trial court dismissed this count for failure to state a claim and entered a judgment dismissing the petition with prejudice.[2]

## DISCUSSION

### I. Lack of Subject Matter Jurisdiction— Negligence Count

In his first point, plaintiff contends that the trial court abused its discretion when it dismissed his negligence claim for lack of subject matter jurisdiction because the work did not occur on Adzick's premises, in that the record did not show that Adzick had exclusive control over the premises, and the work did not occur in the course of Adzick's usual and customary business, in that the record did not show that Adzick was in the business of furnishing defective ladders.[3]

---

**2.** Because it granted the motion on this ground, the trial court did not reach the merits of Adzick's alternative argument that facts adduced during discovery showed that it had not destroyed the ladder.

**3.** Plaintiff continues this point with the allegation that Adzick "did not control" plaintiff. Plaintiff did not follow up on this claim in his argument, so this claim is unreviewable. *Bla-*

*key v. AAA Professional Pest Control, Inc.,* 219 S.W.3d 792, 794 (Mo.App.2007). In any event, it is also irrelevant. The issue of the statutory employer's control over an employee goes to the question of the employee's status as an employee or an independent contractor; control is not a factor in determining the question of "usual business." *Dillard v. Leon Dickens/Forklift of Cuba,* 869 S.W.2d

■ The appropriate means of raising the Workers' Compensation Law as a defense to a common law tort action is by a motion to dismiss for lack of subject matter jurisdiction. *State ex rel. MW Builders, Inc. v. Midkiff*, 222 S.W.3d 267, 269 (Mo. banc 2007). The Rules of Civil Procedure require a circuit court to dismiss an action "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter." Rule 55.27(g)(3). " 'As the term "appears" suggests, the quantum of proof is not high; it must appear by the preponderance of the evidence that the court is without jurisdiction.' " *MW Builders*, 222 S.W.3d at 269 (quoting *James v. Poppa*, 85 S.W.3d 8, 9 (Mo. banc 2002)). "The determination of whether a case falls within the exclusive jurisdiction of the Workers' Compensation Law is a question of fact that is left to the sound discretion of the trial court." *Id.* We review only for abuse of discretion. *Id.* However, when "the facts are not in dispute as to the nature of the agreement and the work required by it, the existence or absence of statutory employment is a question of law for the courts to decide." *State ex rel. MSX Intern., Inc. v. Dolan*, 38 S.W.3d 427, 429 (Mo. banc 2001) (quoting *Bass v. National Super Markets, Inc.*, 911 S.W.2d 617, 621 (Mo. banc 1995)). A factfinder will not be asked to render a factual decision unless the parties disagree about whether the work that caused the injury was work performed under and required by the contract between the alleged statutory employer and the independent contractor or subcontractor. *Bass*, 911 S.W.2d at 621.

■ The Workers' Compensation Law provides remedies for on-the-job injuries and death that supplant common law remedies. *MW Builders*, 222 S.W.3d at 270. Employers subject to the Workers' Compensation Law must furnish compensation to employees for personal injury or death by accident arising out of the course of employment, and they are released from all other liability. Section 287.120.1. The injured employee's rights under the Workers' Compensation Law exclude all other rights and remedies that the employee may have at common law or otherwise. Section 287.120.2.

■ The legislature adopted section 287.040 "to prevent employers from circumventing the requirements of the Act by hiring independent contractors to perform work the employer would otherwise perform." *Bass*, 911 S.W.2d at 619. To accomplish this purpose, section 287.040 extends workers' compensation coverage to businesses who have labor performed under contract, or "statutory employers." The Workers' Compensation Law defines a statutory employer as:

1. Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business.

Section 287.040.1. Thus, statutory employment exists if (1) the work at the time of injury is being performed pursuant to a contract; (2) the injury occurs on or about the premises of the alleged statutory employer; and (3) the work is performed in the usual course of the alleged statutory

317, 319–20 (Mo.App.1994), *overruled on other grounds by Hampton v. Big Boy Steel Erec-* *tion*, 121 S.W.3d 220 (Mo.2003).

employer's business. *MW Builders*, 222 S.W.3d at 270. In addition, section 287.040.3 provides that an independent contractor is the statutory employer of a subcontractor's employee.[4] *Id.*

In this case, plaintiff does not dispute that the work he performed was pursuant to a contract. Rather, he claims that the injury did not occur on Adzick's premises and that the work performed was not in the usual course of Adzick's business.

A. *Premises of the Statutory Employer*

■■■ The term "premises" as used in section 287.040.1 is to be liberally construed and is not limited solely to premises owned by the statutory employer or the location of the employer's permanent place of business. *MW Builders*, 222 S.W.3d at 271. Rather, it "contemplates 'any place where, in the usual operation of [the employer's] business it is necessary for those whom [the employer] has employed ... to be while doing the work.'" *Id.* (quoting *Horner v. Hammons*, 916 S.W.2d 810, 817 (Mo.App.1995)).

> "Premises" include locations that temporarily may be under the exclusive control of the statutory employer by virtue of the work being done, and "exclusive control" indicates such a control in the "premises" by the statutory employer that the general public does not have an equal right to use them along with the employer and the independent contractor.

*Boatman v. Superior Outdoor Advertising Company*, 482 S.W.2d 743, 745 (Mo.App. 1972) (quoted in *MW Builders*, 222 S.W.3d at 271 (citations omitted)); *see also State*

*ex rel. J.E. Jones Const. Co. v. Sanders*, 875 S.W.2d 154, 158 (Mo.App.1994).

Plaintiff contends that there was evidence that other "contractors" were on the site, and therefore the premises may not have been under Adzick's "exclusive control." He relies on the deposition testimony of Adzick's supervisor, which he characterizes as stating that other "contractors" were on the job site. However, he did not include this deposition in the legal file. He supports his argument only with a reference to a page in his motion to dismiss where he described this testimony. Plaintiff, as appellant, was required to file this deposition in the record on appeal.[5] Rule 81.12(a); *In re T.F.*, 142 S.W.3d 819, 821 (Mo.App.2004). Without the required record, there is nothing for this court to review. *Id.* Plaintiff's failure to file a complete record affects our ability to dispose of this case since we do not have the deposition itself, which would disclose the supervisor's verbatim testimony and the context in which it was given. Accordingly, plaintiff's argument about "other contractors" is unreviewable.

■■■ The documents before the trial court and in the record on appeal unequivocally demonstrate that Adzick was serving as the general contractor responsible for the interior remodeling and renovation on the U.S. Title job site. The affidavit established that the U.S. Title job site was closed to U.S. Title employees and the general public. It further established that all of the individuals on the job site were employees of Adzick or its subcontractors.

---

**4.** 3. The provisions of this section shall not apply to the owner of premises upon which improvements are being erected, demolished, altered or repaired by an independent contractor but such independent contractor shall be deemed to be the employer of the employees of his subcontractors and their subcon-

tractors when employed on or about the premises where the principal contractor is doing work.

Section 287.040.3.

**5.** Plaintiff filed only the cover page of the deposition.

The law requires that the statutory employer have such control over the premises that "the *general public* does not have an equal right to use them." *Boatman*, 482 S.W.2d at 745 (emphasis added). Plaintiff has not argued that the general public had access.

Adzick was the general contractor in charge of the remodeling project. The owner, U.S. Title, had temporarily given control of the premises to be remodeled to Adzick, so the general public did not have the right to use them. In this situation, the U.S. Title job site was temporarily under Adzick's exclusive control. Plaintiff was injured on or about "the premises" of Adzick for the purposes of section 287.040. *See MW Builders*, 222 S.W.3d at 272.

### B. *Usual Course of Business*

■■■ "Usual business," as used in section 287.040.1, is defined as " 'those activities (1) that are routinely done (2) on a regular and frequent schedule (3) contemplated in the agreement between the independent contractor and the statutory employer to be repeated over a relatively short span of time (4) the performance of which would require the statutory employer to hire permanent employees absent the agreement.' " *MSX Intern.*, 38 S.W.3d at 429 (quoting *Bass*, 911 S.W.2d at 621).

■■■ Plaintiff asserts in his point that Adzick was not engaged in its "usual business" because it was not in the business of furnishing defective ladders.[6] Plaintiff's argument is irrelevant. The relevant inquiry is whether plaintiff was performing work that was part of Adzick's business when he was injured.

■ We examine the work that was being performed and that led up to the incident that caused the injury to determine if that work was part of the general contractor's "usual business." *See Anders v. A.D. Jacobson, Inc.*, 972 S.W.2d 612, 613 (Mo.App.1998). Adzick was a general contractor that performed interior commercial remodeling that routinely included HVAC work. It entered into a contract that called for HVAC work. Mr. Adzick averred, and it is a matter of common sense, that to perform the HVAC work required by the contract, Adzick would have had to hire its own employees or contract with an HVAC subcontractor. It subcontracted the HVAC work to Welsch, and plaintiff was performing the HVAC work covered by the subcontract at the time of his injury. Thus, the work plaintiff was performing at the time of his injury was in Adzick's usual course of business. *See MSX Intern.*, 38 S.W.3d at 430; *Augur v. Norfolk Southern Ry. Co.*, 154 S.W.3d 510, 517 (Mo.App.2005); *Anders*, 972 S.W.2d at 613–14; *Jones*, 875 S.W.2d at 158; *Tumbas v. J.L. Mason Group, Inc.*, 809 S.W.2d 188, 190–91 (Mo.App. 1991).

### C. *Conclusion*

■■■ Adzick established the three essential elements that made plaintiff a statutory employee: plaintiff's work was being performed pursuant to a contract; his injury occurred on premises under Adzick's exclusive control; and he was injured while performing work that was in the usual course of Adzick's business. Because Adzick was plaintiff's statutory employer, all of plaintiff's common law claims fall under the exclusive jurisdiction of the Commission. The trial court did not abuse

---

**6.** Plaintiff challenges other elements of this definition in the argument under this point. We do not review errors raised in the argument section of the brief that are not set out in the point relied on. *Hutchings ex rel. Hutchings v. Roling*, 193 S.W.3d 334, 346 (Mo.App.2006).

its discretion in granting Adzick's motion to dismiss for lack of subject matter jurisdiction. Point one is denied.

## II. *Failure to State a Claim—Spoliation Count*

In his second point, plaintiff asserts the trial court erred in granting Adzick's motion to dismiss plaintiff's claim for spoliation of evidence because a cause of action for spoliation would be recognized in Missouri if properly pleaded, and he pleaded facts sufficient to meet all of the elements of the tort if it would be recognized. We disagree that the petition alleged sufficient facts to state a cause of action that could be recognized.

### A. *Missouri Law*

"Spoliation" is the "intentional destruction, mutilation, alteration or concealment of evidence." Black's Law Dictionary 1409 (7th ed.1999). "In Missouri, if a party has intentionally spoliated evidence, indicating fraud and a desire to suppress the truth, that party is subject to an adverse evidentiary inference." *Baugher v. Gates Rubber Co., Inc.*, 863 S.W.2d 905, 907 (Mo.App.1993) (citing *Brown v. Hamid*, 856 S.W.2d 51, 56–57 (Mo. banc 1993)). "However, Missouri has not recognized spoliation, either intentional or negligent, as the basis for tort liability against either a party or a non-party to the action in which the evidence was to be used." *Id.* at 907–08; *see also Pikey v. Bryant*, 203 S.W.3d 817, 822 (Mo.App. 2006).

No Missouri court has recognized intentional or negligent spoliation as a tort. In the three Missouri cases that have considered arguments urging the recognition of a tort based on spoliation, the respective courts have not reached the question because the essential elements that would be required for a cause of action of spoliation,

if one were recognized, either were not alleged or could not be proved.

In *Brown v. Hamid*, 856 S.W.2d 51, 56 (Mo. banc 1993), the trial court denied the plaintiff leave to file a new count alleging intentional spoliation of the plaintiff's medical records on the ground that Missouri did not recognize the cause of action. The issue of the missing records had been disputed in various other proceedings before the trial court, and the trial court had made a finding that it was "unknowable" what happened to the records. On appeal, the Missouri Supreme Court found no basis to recognize a new tort of intentional spoliation of evidence, as then recognized in California, because, given the trial court's finding on the cause of the missing records, there was no evidence that the defendant had destroyed the records. *Id.*

In *Baugher*, the defendant Gates appealed from a judgment dismissing its cross-claim against its co-defendant, an insurance company, for failure to state a recognized cause of action. The cross-claim attempted to state claims for intentional and negligent spoliation of evidence based on allegations that the insurance company had intentionally or negligently lost or destroyed a part from a machine manufactured by Gates that had allegedly caused the plaintiff's injuries. In the primary claim, the plaintiff, an injured worker, had filed a lawsuit against Gates to recover damages for personal injuries caused by a defective machine manufactured by Gates. The primary claim was still pending at the time the dismissal of the cross-claim was appealed. We examined the torts of intentional and negligent spoliation as they had developed in jurisdictions that had recognized them. We determined that if the tort of intentional spoliation were recognized in Missouri, it would have stricter standards than required in California and would require "but for" causation. *Baugh-*

*er*, 863 S.W.2d at 910. We also held such a tort would require intentional interference and the absence of justification. *Id.* Gates' cross-claim conclusorily alleged that the insurance company intentionally spoliated evidence in order to disrupt Gates' ability to defend itself against Baugher's claim. We held that the cross-claim failed to plead facts supporting an inference that the insurance company acted intentionally, but, to the contrary, showed that the insurance company would not benefit from any spoliation of evidence since it was subrogated to Baugher, which would need the evidence to prosecute its claim. *Id.* Because intentional conduct was not properly pleaded, we affirmed the dismissal of the intentional spoliation count without reaching the question of whether Missouri should recognize the tort of intentional spoliation. *Id.*

We further determined that the very few jurisdictions that had recognized an independent tort of negligent spoliation had required that the common law elements of negligence be established, including a legal or contractual duty to preserve the evidence, proximate cause, and damages. *Id.* at 911–12. We found that these jurisdictions required that the underlying litigation be resolved and damage be established before a cause of action for negligent spoliation would arise. *Id.* at 913–14. We held that because the underlying action had not been resolved, there was no injury, and the trial court had not erred in dismissing the claim for negligent spoliation. *Id.* As a result, we did not reach the question of whether Missouri should recognize the tort of negligent spoliation.

In *Pikey*, the Southern District reviewed arguments supporting the recognition of a tort for intentional first-party spoliation in the context of an appeal from a dismissal of a petition filed by a decedent's survivors against the decedent's physician for inten-tional spoliation of records relating to the receipt of a CT report. *Pikey*, 203 S.W.3d at 819–20. The court of appeals reviewed our opinion in *Baugher* and cases in five jurisdictions that recognized a tort of first-party intentional spoliation. *Id.* at 822–24. It concluded that any petition purporting to state a cause of action for intentional spoliation of evidence must allege facts supporting a causal relationship between the intentional spoliation and the injured party's ability to prosecute the underlying suit. *Id.* at 824. It held that the mere allegation that the plaintiffs had incurred damages was insufficient. It concluded:

> Plaintiffs' petition contains no allegations of ultimate facts of a causal relationship between the intentional spoliation and the inability of the Plaintiffs to prove the wrongful death action; or that the intentional spoliation disrupted or prejudiced the wrongful death action in any fashion; or that the intentional spoliation created an inability for Plaintiffs to prevail in the wrongful death action. Without such factual allegations, Plaintiffs' petition fails to allege a requisite causal connection between the spoliation and the frustration of the civil action, and, therefore, fails to state a cause of action for intentional spoliation of evidence.

*Id.* at 825.

### B. *Plaintiff's Cause of Action*

In his spoliation count, plaintiff alleged that prior to his dismissal of Bauer, he was pursuing a products liability and negligence claim against Bauer; that Adzick knew of the claim that a defective ladder caused plaintiff's injuries; that Adzick knew that the ladder was vital to plaintiff's case; that Adzick "caused the destruction, mutilation or loss of said ladder for the purpose and with the intent to disrupt the Plaintiff's claims"; that as a direct and proximate result, plaintiff "is unable to

prove, or will have increased difficulty proving the lawsuit as that the ladder is unavailable for identification, testing and discovery;" and as a "direct and proximate result of the aforementioned acts, Plaintiff has sustained damages, to wit: Inability to prove or difficulty in proving, his lawsuit and the ability to seek common law damages for his injuries as described in previously."

In his brief, plaintiff does not articulate whether he is seeking recognition for a tort of intentional spoliation or negligent spoliation or whether he is claiming first-party or third-party spoliation. Plaintiff argues that he has pleaded the essential elements that *Pikey* held would be required if the tort of spoliation were to be recognized in Missouri. *Pikey* addresses only intentional first-party spoliation, not negligent spoliation or third-party spoliation.

It is clear that plaintiff has not alleged and cannot now allege a claim for negligent spoliation against Adzick because plaintiff has no underlying claim against Bauer that has been resolved. *See Baugher*, 863 S.W.2d at 914. Further, it is equally clear that plaintiff's claim against Adzick cannot be a first-party spoliation claim because the allegedly frustrated action is the potential design defect product liability claim against Bauer. Plaintiff's claim against Adzick can only be a third-party spoliation claim. Therefore, the issues are narrowed to determining whether plaintiff has alleged the essential elements of a claim for intentional spoliation against a third party, and, if so, whether a cause of action for intentional third-party spoliation should be recognized in Missouri.

### C. *Third–Party Intentional Spoliation*

▇▇ Third-party spoliation is distinct from first-party spoliation. If first-party spoliation has occurred, the injured party has the benefit of the use of an adverse inference at trial even without an independent tort claim. *See Schneider v. G. Guilliams, Inc.*, 976 S.W.2d 522, 526 (Mo.App. 1998) (citing *Baugher*, 863 S.W.2d at 907). Although the injured party does not have the benefit of this adverse inference when the alleged spoliator is not a party, "it also seems that under those circumstances there is a corresponding decreased likelihood that the third party will deliberately destroy the evidence for an improper purpose." *Edwards v. Louisville Ladder Co.*, 796 F.Supp. 966, 971 (W.D.La.1992) (applying Louisiana law).

The majority of jurisdictions that have addressed the issue have refused to recognize a tort based on spoliation of evidence. *See Fletcher v. Dorchester Mutual Insurance Company*, 437 Mass. 544, 773 N.E.2d 420, 424 (2002), and the cases compiled therein. *See also Lucas v. Christiana Skating Center, Ltd.*, 722 A.2d 1247, 1250–51 (Del.1998). Some of these jurisdictions have specifically refused to recognize a tort based on third-party intentional spoliation of evidence. *See, e.g., Temple Cmty. Hosp. v. Sup.Ct.*, 20 Cal.4th 464, 84 Cal. Rptr.2d 852, 976 P.2d 223, 233 (1999); *Owens v. Am. Refuse Sys. Inc.*, 244 Ga.App. 780, 536 S.E.2d 782, 784 (2000); *Dowdle Butane Gas Co., Inc. v. Moore*, 831 So.2d 1124, 1135 (Miss.2002); *Timber Tech Engineered Bldg. Products v. The Home Ins. Co.*, 118 Nev. 630, 55 P.3d 952, 953–54 (2002).

However, a minority of jurisdictions have recognized the tort of third-party intentional spoliation. Among those jurisdictions that have addressed the elements, a consensus has developed that the elements are: (1) a pending or potential civil lawsuit, (2) knowledge of the spoliator that the litigation is pending or probable, (3) intentional destruction of evidence, (4) intent of the spoliator to interfere with or

disrupt or defeat the potential lawsuit, (5) a causal relationship between the act of spoliation and the inability to prove the elements of the lawsuit, and (6) damages. *Oliver v. Stimson Lumber Co.*, 297 Mont. 336, 993 P.2d 11, 18–23 (1999); *Coleman v. Eddy Potash, Inc.*, 120 N.M. 645, 905 P.2d 185, 189 (1995), *overruled on other grounds, Delgado v. Phelps Dodge Chino, Inc.*, 131 N.M. 272, 34 P.3d 1148 (2001); *Hannah v. Heeter*, 213 W.Va. 704, 584 S.E.2d 560, 563–64 (2003).

D. *Sufficiency of Allegations in Petition*

■ We next turn to the specific question of whether the amended petition properly alleged a cause of action for intentional third-party spoliation. As the above discussion clarifies, the essential elements of that cause of action in the jurisdictions in which it is recognized are: pending or probable civil litigation; the spoliator's knowledge of the pending or potential lawsuit; intentional destruction of evidence in order to disrupt or defeat the lawsuit; a causal relationship between the evidence and the inability to prove the lawsuit; and damages. Since it is readily apparent that plaintiff has not alleged sufficient facts from which intentional destruction of the evidence can be inferred, we will limit our discussion to that element.

Plaintiff merely alleged that Adzick "caused" the ladder to be lost or destroyed with the "intent" to disrupt plaintiff's claims. This conclusory allegation is insufficient. *Baugher*, 863 S.W.2d at 910. Plaintiff was required to allege facts from which one could reasonably infer that Adzick intentionally destroyed the evidence in order to defeat the lawsuit. *Id.* Plaintiff has failed to allege any facts supporting this conclusion. Rather, none of the facts alleged even suggests that Adzick would have any motive to destroy evidence or would benefit from any loss of the evidence needed by plaintiff to make its case against Bauer.

E. *Conclusion*

Plaintiff has not alleged sufficient facts from which the intentional destruction of evidence can be inferred. The failure to properly plead any one element is fatal. Because plaintiff has not alleged facts supporting each of the essential elements of a potential tort for intentional third-party spoliation, we do not reach the question of whether such a tort should be recognized in Missouri. Point two is denied.

CONCLUSION

The judgment of the trial court is affirmed.

ROBERT G. DOWD, JR. and KENNETH M. ROMINES, JJ., concur.